OPINION OF THE COURT
Lester Sacks, J.
This case is before the court on cross motions for summary judgment. The plaintiff and defendant Richmond Hill Savings Bank have agreed to the facts outlined below. The defendant Taramatie De Dios has answered neither plaintiff’s complaint nor Richmond Hill Savings Bank’s cross claim and is in default.
In August, 1981, the plaintiff sold a condominium located in Jamaica, the West Indies. Because of Jamaican currency restrictions, the purchase price was to be paid in installments. A check for the first installment, in the amount of $3,444.58 and drawn by the Royal Bank of Jamaica on the Marine Midland Bank in New York City, was sent by first-class mail to plaintiff’s attorney.
The defendant Taramatie De Dios apparently intercepted this draft en route, forged the indorsement of Josephine Moore, and deposited it into her account at the Richmond Hill Savings Bank. Acting in good faith and in accordance with reasonable commercial standards, the Richmond Hill Savings Bank then collected $3,444.58 from the drawee bank and credited Ms. De Dios’ account. Subse *489 quently, Ms. De Dios withdrew the funds from her account, and no proceeds of the $3,444.58 draft remain in the possession of the Richmond Hill Savings Bank. Eventually, the plaintiff inquired about the missing installment, discovered the forgery, and notified all the proper individuals.
The plaintiff now sues for the value of the stolen check, originally alleging in her complaint that Richmond Hill Savings was negligent in failing to verify the indorsement and detect the forgery. Because the plaintiff has agreed the bank acted reasonably, she now seeks to hold Richmond Hill Savings liable for conversion under section 3-419 (subd [1], par [c]) of the Uniform Commercial Code. From the agreed facts, it also appears that plaintiff has a colorable contract claim under the common-law action for money had and received. (See Hechter v New York Life Ins. Co., 46 NY2d 34; Henderson v Lincoln Rochester Trust Co., 303 NY 27.) Richmond Hill Savings argues: that plaintiff cannot now amend her cause of action; that it is excused from liability under section 3-419 of the Uniform Commercial Code because it acted in good faith and in accordance with reasonable commercial standards (see Uniform Commercial Code, § 3-419, subd [3]); and that plaintiff’s own negligence precludes her from holding the bank liable.
In this State, plaintiffs are no longer required to stand steadfast on the technical perfection of their pleadings. The fact that a complaint mislabels the conduct does not change the legal force and effect of the factual allegations. (Diemer v Diemer, 8 NY2d 206.) Where, as here, the defendant has notice of the allegedly improper conduct so it may adequately defend its behavior, the plaintiff may rely on any theory of recovery supported by the facts. (Supra.)
Under section 3-419 (subd [1], par [c]) of the Uniform Commercial Code an instrument is converted when it is paid on a forged indorsement. This section codified the prevailing common-law view that payment on a forged instrument is not an acceptance; even though made in good faith such payment remains an exercise of dominion and control inconsistent with the rights of the true owner. (Uniform Commercial Code, § 3-419, Comment 3.)
*490 At common law, a collecting bank in the position of Richmond Hill Savings was held strictly accountable to the rightful owner whether or not it acted in good faith or in conformity with commercial practice. (Talbot v Bank of Rochester, 1 Hill 295.) Under subdivision (3) of section 3-419 of the Uniform Commercial Code, however, a bank is excused from liability if it no longer holds any “proceeds” from the instrument and if it acted in good faith and in accordance with reasonable commercial standards. Although subdivision (3) of section 3-419 appears, on its face, reasonably straightforward, throughout the United States this section has generated a great deal of litigation, with conflicting results. (See, generally, 74 Col L Rev 104.) The Court of Appeals, while acknowledging the difficulties in the section, has never specifically addressed the issues presented by subdivision (3) of section 3-419. (Hechter v New York Life Ins. Co., 46 NY2d 34, supra.)
The problem in giving full force and effect to the clear language of the section arises from apparent conflicts both with the law of negotiable instruments as developed by the common law and with other provisions of the Uniform Commercial Code itself.
Under the code, even if Richmond Hill Savings is insulated from direct liability to the plaintiff by subdivision (3) of section 3-419, the bank remains liable for negotiating the forged instrument. The plaintiff may still sue the drawer for the original debt, the drawer can then sue the drawee bank under subdivision (1) of section 3-413 for failing to pay the draft, and the drawee bank can recover from the collecting bank for breach of warranty under section 4-207 (subd [1], par [a]) of the Uniform Commercial Code. It has been argued, therefore, that strict adherence to subdivision (3) of section 3-419 simply complicates the litigation without in any way affecting the ultimate liability of the collecting bank. (See Cooper v Union Bank, 9 Cal 3d 371.)
Similarly, through an action for money had and received, a common-law cause of action not superseded by the code (Hechter v New York Life Ins. Co., supra), the plaintiff may also impose liability on the defendant bank, subject only to defenses based on the behavior of the plaintiff and *491 not on the good faith of the bank. (See Ann., 100 ALR2d 670.) Arguably, the common-law action might be maintained even though an action for conversion under the code is precluded.
But an action in which plaintiff sues drawer, drawer sues drawee, and drawee sues the collecting or depositary bank does not, in the end, necessarily impose the same liability as a direct suit against the collecting bank. The chain of liability from drawer to collecting bank may be broken because the drawer’s negligence caused the forgery (Uniform Commercial Code, § 3-406), the drawer neglected to report the forgery (Uniform Commercial Code, § 4-406), or the drawee bank waived or failed to assert a valid defense against the drawer (Uniform Commercial Code, § 4-406, subd [5]). It is thus conceivable, though generally unlikely, that a plaintiff may receive compensation without any liability being ultimately imposed on the collecting bank. Encouraging complex, duplicitous actions that can require plaintiffs to seek redress against drawee banks in distant forums may be ill-advised, but that is for the Legislature to determine. Subdivision (3) of section 3-419 does not conflict with other provisions of the code, and it should be enforced in the present action.
Still, defendant has agreed to facts sufficient to establish plaintiff’s prima facie claim under a contract cause of action for money had and received. Section 1-103 states that “[ujnless displaced by the particular provisions of this Act, the principles of law and equity * * * shall supplement its provisions”, and only an express code provision limiting plaintiff’s remedy to the statutory suit for conversion will destroy the contract. (Hechter v New York Life Ins. Co., 46 NY2d 34, supra.) Because there is no such express provision, the Hechter court held that, for the purpose of applying the six-year, contract Statute of Limitations, the common-law cause of action is not superseded by the code. Whether the cause of action survives when a bank deals with an instrument in good faith and in accordance with reasonable commercial standards is another matter, however, and that question was specifically left open by Hechter.
*492 After careful reflection, this court believes that the good-faith defense established by the Uniform Commercial Code must apply to the common-law action. Subdivision (3) of section 3-419 says the bank “is not liable in conversion or otherwise” when the good-faith requirement is satisfied (emphasis added). In Hechter, the court observed that the “or otherwise” language suggests the Legislature intended precode actions to survive, if only because, in cases covered by subdivision (3) of section 3-419, the precode actions are precluded along with the action for conversion.
Some jurisdictions have diluted the effect of subdivision (3) by applying highly technical legal doctrine developed before the code was enacted. In Cooper v Union Bank (supra) the court so narrowly defined “proceeds” that the good-faith defense is all but expunged. Ervin v Dauphin Deposit Trust Co. (38 Pa D & C 2d 473), accomplished a similar result by restrictively defining “representative”. While these holdings have great merit technically and as public policy, to this court they appear to contradict the obvious intent of the statute.
Accordingly, defendant’s motion for summary judgment is granted.