STEVE KNESZ, PLAINTIFF-RESPONDENT, v. THE CENTRAL JERSEY BANK AND TRUST COMPANY OF FREEHOLD, A NEW JERSEY CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF-APPELLANT, v. CERRATO, O'CONNOR, MEHR & SAKER, A PROFESSIONAL CORPORATION, THIRD-PARTY DEFENDANT-APPELLANT.

Argued September 27, 1983—Decided June 20, 1984.

1

2

*Donald J. Rapson* argued the cause for appellant The Central Jersey Bank and Trust Company of Freehold, etc. (*Lautman, Rapson, Henderson & Mills,* Special Counsel to *McCue & McCue,* attorneys).

*Andrew M. Zapic* argued the cause for appellant Cerrato, O'Connor, Mehr & Saker, etc. (*Lautman, Rapson, Henderson & Mills,* Special Counsel to *McCue & McCue* and *Richard A. Amdur,* attorneys).

*Frederick R. Stem* argued the cause for respondent (*Stem & Stem,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

Plaintiff, Steve Knesz, a Pennsylvania resident, owned a cooperative apartment in New York City. He engaged Thomas G. Moringiello, a since-disbarred New York attorney, to act as his agent for the purpose of collecting rent from the occupant of the apartment and making disbursements for expenses, including taxes, mortgage amortization, and maintenance costs associated with the apartment. Apparently, Moringiello did not regularly transmit rental proceeds to Knesz because the rents did not exceed these expenses.

On or about March 16, 1979, without plaintiff's knowledge or consent, Moringiello sold the apartment to one Lois Gartlir for $32,651.00. Ms. Gartlir remitted the purchase price to Moringiello by five checks. One was a cashier's check in the amount of $16,974.24, dated March 14, 1979, drawn by Citibank, N.A., at the request of Lois Gartlir, payable to Steve Knesz. Three checks, each dated March 13, 1979, were drawn by Hofheimer, Gartlir, Gottlieb & Gross on Morgan Guaranty Trust Company of New York, payable to Lois Gartlir in the amount of $10,000.00, $5,000.00, and $500.00 respectively. The fifth check was drawn on Banker's Trust in the amount of $177.30, payable to Lois Gartlir. Gartlir specially indorsed the three Morgan Guaranty checks and the Banker's Trust check, all under the legend "pay [or "payable"] to the order of Steve Knesz." Moringiello forged plaintiff's indorsement on all five instruments. The forger's own signature and the notation "For deposit only," appeared to have been placed under plaintiff's forged indorsement on the back of three of the checks, the $10,000.00 and $500.00 Morgan Guaranty checks and the $177.30 Banker's Trust check totaling $10,677.30. These three checks were collected in due course and credited to Moringiel-

lo's account. The two remaining instruments—the $16,974.24 Citibank check and the $5,000.00 Morgan Guaranty check—are the subject of this litigation.

During this time, Moringiello had been representing other clients, Salvatore and Susan Dagate, in connection with the sale of their residence in Staten Island. James E. Collins, Esq., of the New Jersey law firm of Cerrato, O'Connor, Mehr & Saker, also represented the Dagates in connection with their purchase of a new home in Jackson Township, New Jersey. The Dagates wanted the proceeds of the Staten Island sale applied to the purchase price of the Jackson Township home. On March 5, 1979, the Dagates gave Collins a $24,000.00 check, payable to Collins, drawn by Moringiello on his special attorney's account with Central State Bank of New York. The Dagates advised Collins that the check represented the proceeds of the sale of their Staten Island property. After confirming this with Moringiello, Collins indorsed the $24,000.00 check and deposited it into his law firm's trust account with defendant, Central Jersey Bank and Trust Company of Freehold ("Central Jersey").

Moringiello's check bounced. Collins telephoned Moringiello, who apologized for the oversight and promised to deliver immediately replacement checks covering the Dagates' $24,000.00 deposit. On March 14, 1979, Moringiello delivered to Collins three checks totalling $24,000.00: the $16,974.24 Citibank check, the $5,000.00 Morgan Guaranty check, and a personal check from Moringiello's Citibank account in the sum of $2,025.76. Moringiello placed the notation "Pay to the order of James E. Collins" below Knesz's forged signature on the $16,974.24 check.

Collins promptly indorsed and deposited the checks into his firm's trust account with Central Jersey on March 15, 1979. Central Jersey forwarded the checks for payment pursuant to the bank's regular collection process and all three checks were paid in due course by the appropriate payor banks. Subsequently, the Cerrato law firm issued checks against the pro-

ceeds of the $24,000.00 on deposit with Central Jersey. Eventually, the entire $24,000.00 was depleted by these disbursements.

Over nine months later, in January 1980, plaintiff first discovered that Moringiello had sold his apartment. Knesz chose to ratify the sale and recover the proceeds. He obtained copies of the five checks bearing his forged indorsement, executed the requisite affidavits of forgery for each, and had them forwarded to the appropriate banks for collection. These items and photocopies of the $16,947.24 Citibank check and the $5,000.00 Morgan Guaranty check were mailed to Central Jersey on August 28 and September 5, 1980. Citibank subsequently paid Knesz $10,677.30, the full amount of the three checks that Moringiello had illicitly deposited there. Central Jersey, however, refused payment on the remaining $16,974.24 and $5,000.00 checks.

On December 17, 1980, Knesz filed a two-count complaint against Central Jersey to recover $21,974.24 for the two unpaid checks. Defendant, Central Jersey, filed an answer and a third-party complaint on April 15, 1981 against Cerrato, O'Connor, Mehr & Saker, asserting that the law firm, as depositor, had warranted the instruments and was therefore liable to the bank. The firm denied its liability, raising the defenses of contributory negligence and intervening causation.

On cross-motions for summary judgment, the trial court ruled that the bank was not liable under the Uniform Commercial Code (UCC or Code), *N.J.S.A.* 12A:3–419(3), which furnishes a broad immunity to certain banks in their handling of forged checks. The Appellate Division reversed the summary judgment order and remanded the case to the trial court for further proceedings. 188 *N.J.Super.* 391, 410 (1982). We granted defendant's petition for certification, 93 *N.J.* 293 (1983), to consider the interpretation and application of the terms of *N.J.S.A.* 12A:3–419(3) of the UCC.

## I

■ *N.J.S.A.* 12A:3–419(3) by its general terms purports to provide that a depositary or collecting bank that acts in a representative capacity in the negotiation of a forged check, doing so in good faith and in conformity to applicable commercial standards, is not liable to the instrument's true owner except to the extent of any proceeds still remaining with it.[1] Specifically, subsection (3) of *N.J.S.A.* 12A:3–419 states that these banks may be insulated from liability to the payee or true owner of a forged check when the following circumstances converge: (1) the bank was acting as a "representative;" (2) it honored the forged check in good faith and in accordance with the applicable reasonable commercial standards; and (3) it retained no "proceeds" of the check.

This section of the UCC purports sharply to restrict the causes of action available to the true owner or payee of a check whose indorsement has been forged. Under *N.J.S.A.* 12A:3–419(1)(c), the owner-payee may bring an action against a drawee or payor bank that transmits final payment on the forged indorsement, the payor bank being defined as "a bank by which an item is payable as drawn or accepted," *N.J.S.A.* 12A:4–105(b). However, the UCC by the application of the terms of § 3–419(3) does not extend this liability to a "depositary" or "collecting" bank that in the chain of collection has handled the check with the forged indorsement, a depositary bank being "the first bank to which an item is transferred for collection"

---

[1] The exact language of *N.J.S.A.* 12A:3–419(3) is:

Subject to the provisions of this Act concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

We note that in this case UCC provisions governing restrictive endorsement are in no way implicated.

(*N.J.S.A.* 12A:4–105(a)), and a collecting bank being "any bank handling the item for collection except the payor bank" (*N.J. S.A.* 12A:4–105(d)).

In concluding that defendant, Central Jersey, was liable to the plaintiff and not entitled to the immunity accorded by § 3–419(3), the Appellate Division did not base its determination on any asserted failure on the part of the bank to adhere to the standards of good faith and commercial reasonableness applicable to such transactions. *N.J.S.A.* 12A:3–419(3). Conduct falling short of the standards of good faith and commercial reasonableness includes such matters as the failure to make inquiries about facial irregularities on a check or into the indorsing agent's authority. *See, e.g., Salsman v. National Community Bank of Rutherford,* 102 *N.J.Super.* 482 (Law Div.1968), aff'd o.b., 105 *N.J.Super.* 164 (App.Div.1969) (bank was negligent in failure to pay in accordance with terms of restrictive indorsement and to inquire into agent's authority); *accord Slavin v. Passaic Nat'l Bank & Trust Co.,* 114 *N.J.L.* 341 (E. & A.1935) (common law imposed duty on depositary bank to inquire into agent's authority to endorse check payable to designated payee-principal corporation). *See generally* Comment, "Forged Indorsements, Depositary Banks, and the Defense of Section 3–419(3) of the Uniform Commercial Code," 18 *Houston L.Rev.* 173, 185–88 (1980).

Here, the trial court expressly found, and the Appellate Division concurred, that Central Jersey acted in a reasonable manner in accepting the instrument with a forged indorsement, having not dealt with the forger, but with its regular customer, James E. Collins, Esq., an attorney whose law firm maintained an account with the bank. There is no question that Collins had authority to indorse a check payable to the law firm and to deposit this into the firm's special account. Both checks were endorsed by Collins and also were stamped with the law firm's restrictive indorsement. Further, affixed to the Citibank check was the restrictive indorsement "Pay to the order of James E. Collins," indicating a proper chain of title from Knesz-to-Collins-

to-Cerrato, O'Connor, Mehr & Saker, Esqs. The only arguable irregularity in the instrument was the absence of a similar restrictive indorsement to Collins on the Morgan Guaranty check, but no one contends that such a restrictive indorsement was required or that this slight difference was sufficient to raise any suspicions.

We agree with both courts below that a claim based on lack of good faith or a departure from commercially reasonable practice under § 419(3) is unavailable to the plaintiff under these facts.

## II

The immunity of § 3-419(3) is expressly granted to "a representative * * * who has * * * dealt with an instrument or its proceeds on behalf of one who was not the true owner * * *." The section explicitly and unmistakably provides that "a representative" shall include "a depositary or collecting bank." Yet, despite the specific designation of depositary or collecting banks as a "representative," the Appellate Division ruled that the term "representative" in § 3-419(3) does not include a depositary bank that accepts for collection a check with a forged indorsement. 188 *N.J.Super.* 408-10.

The Appellate Division equated the bank's "representative" status under § 3-419(3) with that of a bank acting as an agent of the owner of an item submitted for collection under *N.J.S.A.* 12A:4-201. *Id.* This statute reads in pertinent part:

> Unless a contrary intent clearly appears and prior to the time that a settlement given by a collecting bank for an item is or becomes final * * * the bank is an agent or sub-agent of the owner of the item and any settlement given for the item is provisional.

The Appellate Division reasoned that since the forger can never pass good title if an instrument requires endorsement by the owner, the bank cannot be an agent for the owner when it accepts the check for collection from the forger or his transferee. 188 *N.J.Super.* at 409. Consequently, the bank cannot

qualify for the immunity provided for § 3–419(3) since it has not achieved representative or agent status.

We conclude that the Appellate Division's definition of "representative" is unjustifiably restrictive. The bank's agency status under § 4–201 is based upon its acceptance of a check from "an owner," who by definition cannot be the forger or his transferee. However, § 3–419(3) protects a "representative, including a depositary or collecting bank, who has * * * dealt with an instrument or its proceeds *on behalf of one who was not the true owner* * * *." (Emphasis added). Consequently, "representation" under § 3–419(3) contemplates dealing with a party who is not the true owner of an instrument, whereas "agency" under § 4–201 envisages actions on behalf of a true owner. Thus, the Appellate Division interpretation unreasonably removes the protection of § 3–419(3) from the check-collection process, which, arguably, would provide the most likely occasion for a bank to honor a check with a forged indorsement.

The Appellate Division also stressed that if "agency status" were intended to apply to a bank's handling of a forged check, other language would have accomplished this, "such as use of the word 'customer,' defined by § 4–104(e) to include any person for whom a bank has agreed to collect an item." 188 *N.J.Super.* at 409. However, New Jersey Study Comment 1 to § 4–201, which the Appellate Division relies on, expressly refers to the depositary bank as the agent of "the *customer* initiating collection," (emphasis added), which could be either the owner-payee or the forger or his transferee.

The Appellate Division further observed that agency status provided under § 4–201 was intended to deal with bank insolvency during the collection process, citing New Jersey Study Comment 1 to *N.J.S.A.* 12A:4–201. *Id.* This purpose, however, implies that the definition of "representative" under § 3–419(3) is more appropriately related to the broad definition of representative under *N.J.S.A.* 12A:1–201(35). This section of the

UCC provides an expansive definition of the term "representative," namely, "an agent, an officer of a corporation or association, and a trustee, executor or administrator of an estate, or any other person empowered to act for another." The depositary bank must in some sense be "empowered to act for" the third party who presents the check bearing the payee's forged indorsement. Under § 1-201(35), a depositary or collecting bank acts as its customer's representative in the entire check-collection process.[2] In this process the instrument is accepted and presented to the drawee bank and funds are collected and credited to the customer, whether that customer be the owner-payee or the forger or his transferee. As such, the bank meets the requirement for immunity by acting in a representative capacity "on behalf of one who was not the true owner" under § 3-419(3).

The Appellate Division further reasoned that a bank in this context is not a representative because a check can have only one owner at a time; therefore, the depositary bank processing a forged check presented by a depositor is not acting on behalf of the item's true owner since the forger or his transferee cannot take title. 188 *N.J.Super.* at 410. However, the bank can also function as agent for the customer or depositor. The New Jersey Study Comment 1 to § 4-201, as already noted, alludes to the depositary bank as the agent of "the customer initiating collection." If the customer initiating collection were

---

[2]In some situations extraneous to this case, a bank may immediately give cash to the forger or his transferee, or else provide non-provisional credit to the customer's account, which is then drawn upon. The Court recognizes the existence of authority that finds that a bank under these circumstances does not act in a "representative" capacity for its customer and thus is ineligible for immunity under § 3-419(3). Since the bank in effect has purchased the check, the forger or his transferee, cash already in hand, has no need for the representative services of the depositary bank in the ensuing process of check collection. *See, e.g., Denn v. First State Bank of Spring Lake Park,* 316 *N.W.*2d 532, 536 (Minn.1982); Comment, 5 *Rutgers-Camden L.J.* 319, 322 n. 19 (1974); Farnsworth and Leary, "UCC Brief No. 10: Forgery and Alteration of Checks," 14 *Prac.Law.* No. 3 at 75, 79 (1968).

also the owner-payee of the check, the bank would be in that instance a representative of a single party. However, in a case such as this, where the customer initiating collection is not the true owner but the transferee of a forger, the possibility of dual representation is implicated. Thus, a depositary bank can be the "representative" of the customer or depositor in processing the forged check for collection, even if that party is not the true owner of the check.

The strongest argument advanced in favor of the non-representative status of depositary or collecting banks in check collection—the argument that was adopted by the Appellate Division—is extrapolated from the UCC's historical background. The Appellate Division stressed that the singular advantage of the pre-UCC common-law rule of strict and direct liability of a depositary or collecting bank to the owner-payee of a forged check that the bank had honored was the avoidance of prolonged, complicated, and circuitous litigation that would otherwise be set in motion in the absence of such liability. 188 *N.J.Super.* at 398–99. A literal application of § 3–419(3), blocking a direct action against the depositary-collecting bank, would result in a chain of litigation. First, the owner of a check may bring an action against the drawer for fulfillment of the underlying obligation in satisfaction of which the check was originally written, under *N.J.S.A.* 12A:3–804 (providing recovery for check that has been lost, destroyed, or stolen), or, alternatively, sue the drawee bank for conversion under § 3–419(1)(c). The drawer will sue the drawee or payor bank for wrongfully debiting his or her account for payment to the forger under § 4–401. The drawee or payor bank will be required to proceed against its transferor. Suit will proceed successively up the collection stream on the basis of strict warranties of presentment and transfer under the UCC until the depositary bank, ultimately liable for honoring the forged instrument, is reached.

The Appellate Division agreed—as does the overwhelming body of decisional and scholarly authority—that the policy of a single direct action against the depositary or collecting bank by

the owner-payee, and the avoidance of lengthy, circuitous, or chain litigation served by the common-law rule is a powerful reason against the imputation of an intent by the drafters of the Code to abrogate the common-law rule by the enactment of § 3–419(3). In support of its position, the court below pointed to the New Jersey Study Comment 5 on that section indicating that the provisions are new and not founded on past state law, as well as to Official Comment 5 to *N.J.S.A.* 12A:3–419, which stated:

> Subsection (3), which is new, *is intended to adopt the rule of decisions* which has held that a representative, such as a broker or depositary bank, who deals with a negotiable instrument for his principal in good faith is not liable to the true owner for conversion of the instrument or otherwise, except that he may be compelled to turn over to the true owner the instrument itself or any proceeds of the instrument remaining in his hands. * * * [UCC Comment 5 to § 3–419 (emphasis added).]

The irony of the emphasized reference in Comment 5, however, is that the common law "rule of decisions" governing the liability of such banks is almost diametrically opposite to what is stated by the plain language of § 3–419(3), which provides a near-absolute immunity to these banks in handling forged checks. The common-law decisional rule was that a party that honored a check bearing a forged indorsement was liable—not immune—to the payee who was the instrument's "true owner." [3] *See, e.g., United States Portland Cement Co. v. United States Nat'l Bank,* 61 *Colo.* 334, 157 *P.* 202 (1916); *Levin v. Union Nat'l Bank,* 224 *Md.* 603, 168 *A.*2d 889 (1961); *Lindsley*

---

[3]The defrauded payee generally could avail itself of two common-law forms of action against the depositary bank. One was a suit in assumpsit, for "moneys had and received." *E.g., Passaic-Bergen Lumber Co. v. United States Trust Co.,* 110 *N.J.L.* 315, 319 (E. & A.1933); *United States Portland Cement Co. v. United States Bank,* 61 *Colo.* 334, 157 *P.* 202, 203 (1916). Alternatively, the payee could also at its election bring a tort action of conversion against the bank that had wrongfully honored a check with his forged signature. *E.g., Teas v. Third Nat'l Bank & Trust Co.,* 125 *N.J.Eq.* 224, 227 (E. & A.1939); *Henderson v. Lincoln Rochester Trust Co.,* 303 *N.Y.* 27, 100 *N.E.*2d 117 (1951); *Crisp v. State Bank of Rolla,* 32 *N.D.* 263, 155 *N.W.* 78 (1915); *May v. City Nat'l Bank & Trust Co.,* 258 *P.*2d 945 (Okla.1953).

*v. First Nat'l Bank,* 325 *Pa.* 393, 190 *A.* 876 (1937); *see also* Kessler, "Forged Indorsements," 47 *Yale L.J.* 863 (1938); Annot., "Right of Check Owner to Recover Against One Cashing It on Forged or Unauthorized Indorsement and Procuring Payment by Drawee," 100 *A.L.R.*2d 670 (1965).

Prior to the adoption of the UCC, New Jersey followed the prevailing common-law rule. *E.g., Teas v. Third Nat'l Bank & Trust Co.,* 125 *N.J.Eq.* 224 (E. & A.1939); *Passaic-Bergen Lumber Co. v. United States Trust Co.,* 110 *N.J.L.* 315 (E. & A.1933); *Buckley v. Second Nat'l Bank of Jersey City,* 35 *N.J.L.* 400 (Sup.Ct.1872). The common-law rule of liability was imposed strictly, even when the depositary bank was unaware of the unauthorized indorsement and not in privity with the rightful payee; a bank paying on such a check "did so at its peril and became liable to the payee * * * for the proceeds." [4] *Teas, supra,* 125 *N.J.Eq.* at 228.

The Appellate Division did not believe that the Code drafters intended to abrogate this well-settled common-law doctrine, at least in the absence of an express announcement of such a purpose. The court emphasized, as we noted earlier, that the New Jersey Study Comment mentioned that § 3–419(3) and § 3–419(4) " 'are new provisions on which no New Jersey law has been found,' " 188 *N.J.Super.* at 404–05. It therefore surmised that "the section impacted upon some other legal principle or problem which had not been theretofore addressed in this jurisdiction." *Id.* at 405. The court determined that this new legal principle adopting the rule of decisions related to "the liability of persons acting as brokers in negotiating the sale of securities," as distinguished from granting a new immunity to

---

[4]Although the courts entertained defenses consisting of the payee's own negligence, acquiescence, or ratification, these apparently did not succeed very often. *See, e.g., Teas, supra,* 125 *N.J.Eq.* at 229 (payee's belated discovery of forgery by his former attorney not considered indicative of negligence); *Passaic-Bergen Lumber Co., supra,* 110 *N.J.L.* at 318–19 (payee's receipt of rent on buildings constructed by forger insufficient to prove payee's ratification of transaction involving checks with forged endorsements).

banks in the collection process. *Id.* Because brokers dealing in negotiable instruments were immune from liability in conversion at common law, the court concluded that § 3–419(3) was intended to codify this immunity for brokers, including banks acting as brokers, but was not intended to extend such immunity to depositary or collecting banks engaged in routine check collection. *Id.* at 406–07.

We disagree with the conclusion of the court below, while acknowledging, as we must, respectable decisional and scholarly support for its result. *See, e.g., Tubin v. Rabin,* 389 *F.Supp.* 787, 789–90 (N.D.Tex.1974), aff'd, 533 *F.*2d 255 (5th Cir.1976); *Cooper v. Union Bank,* 9 *Cal.*3d 371, 507 *P.*2d 609, 107 *Cal.Rptr.* 1 (1973); *Grieshaber v. Michigan Nat'l Bank of Detroit,* 18 *U.C.C.Rep.* 1248, 1255–56 (Mich.Ct.Comm.Pl.1976); *Ervin v. Dauphin Deposit Trust Co.,* 38 *Pa.D. & C.*2d 473, 3 *U.C.C.Rep.* 311 (Pa.Ct. of Comm.Pl.1965); *see also* Comment, "Payee v. Depositary Bank: What Is the UCC Defense to Handling Checks Bearing Forged Indorsements?" 45 *U.Colo. L.Rev.* 281, 308–10 (1974); Comment, "Cooper v. Union Bank: California Protects the True Owner Against a Forged Indorsement Despite Uniform Commercial Code Section 3–419(3)," 25 *Hastings L.J.* 715, 736–38 (1974). We are persuaded by other cases and authority that have recognized that § 3–419(3) is phrased in clear and plain language, that applying this provision in accordance with its unambiguous meaning constitutes a reasonable—not an absurd—policy choice by the Legislature, and further, that there is some historical extrinsic support evidencing an underlying intent on the part of the drafters that is consistent with this application of the provision.

*Denn v. First State Bank of Spring Lake Park,* 316 *N.W.*2d 532 (Minn.1982), confirmed and applied the plain language of UCC § 3–419(3) in holding that a depositary collecting bank was immune from liability to the owner-payee of a forged check that it handled for collection. The court recognized that the critical question was whether banks engaged in the routine collection process were intended to be "representatives" insu-

lated from liability in conversion to payees under § 3–419(3). Relying on a historical analysis of § 3–419(3) and its comments, the *Denn* court noted that the original "representative exception," first included in the May 1949 draft of the UCC, apparently codified the limited exception exempting from liability only those brokers who had been exempt at common law. *Id.* at 535. Further, noting that in 1951 the drafters inserted the phrase "including a depositary or collecting bank" in § 3–419(3), the *Denn* court observed that "[t]he fact that this crucial phrase was added to the Code and was not part of the original version supports the idea that the 1951 drafters intended specifically to exempt depositary and collecting banks from liability." *Id.* Since one year later, in 1952, the drafters added Comment 5, which explicitly included a depositary bank with a "representative such as a broker," the court concluded that the controversial "rule of decisions" exempting such representatives from liability for conversion to true owners was intended to reach depositary and collecting banks. *Id.*

The *Denn* court also emphasized the fact that Comment 6 to § 3–419 expressly acknowledges the immunity of a collecting bank to the owner of an instrument in a direct action in the context of the warranties of presentment and transfer under § 3–417 ("a collecting bank might be liable to a drawee bank which had been subject to liability under this section, even though the collecting bank might not be liable directly to the owner of the instrument"). *Id.* Thus, Comment 6 points to warranties of presentment and transfer (§ 3–417) as the statutory alternative to the common-law direct action, clarifying the fact that circuitous litigation deplored by the commentators and courts alike indeed was anticipated by and within the contemplation of the drafters. This further substantiates the drafters' intent, without confirming their wisdom, to offer new defenses to a depositary or collecting bank that accepted a check with a forged indorsement.

*Jackson Vitrified China v. People's American,* 388 *So.*2d 1059, 1062–63 (Fla.Dist.Ct.App.1980), also applied § 3–419(3)

according to its plain terms, granting immunity to the depositary bank. The court conceded that the best argument, although not ultimately persuasive, against application of § 3-419(3) to depositary and collecting banks was that the provision was probably not originally intended to insulate those banks engaged in the ordinary check collection process from liability to payees, but rather was initially restricted in purpose to protecting brokers of negotiable securities, including banks acting as brokers, from liability to the true owners of those securities. The provision, the argument continues, simply was drawn more broadly than was intended. *Jackson, supra*, 388 *So.*2d at 1062.

Nonetheless, the court rejected the theory that § 3-419(3) could be so restricted in its application to banks acting only as brokers of negotiable securities, despite the reference in Comment 5 to an intent to adopt the prevailing "rule of decisions." The court, as did the *Denn* court, stressed Comment 6 of the UCC, which contemplates the elimination by the UCC of a direct action by the owner against the collecting bank that had been permissible under common law. Therefore, the court, while noting that the payee's position of asserting a direct action would be unassailable at common law, applied § 3-419(3) according to its evident terms, notwithstanding the circuitous and cumbersome litigation that might result and that was avoided by the common-law rule. *Id.* at 1062-63; *see also Moore v. Richmond Hill Savings Bank*, 120 *Misc.*2d 488, 466 *N.Y.S.*2d 131 (Civ.Ct.1983).

We are in consequence not persuaded that the underlying policy served by the common law—the recognition of a single direct action by an owner-payee against the depositary or collecting bank and the avoidance of circuitous or chain litigation—overrides the plain terms of § 3-419(3). That policy was undoubtedly known to the drafters of the Code. It was presumably within their contemplation when § 3-419(3) was inserted granting immunity to these banks. We are constrained to adhere to the choice made by the Legislature in its enactment.

It has not been shown that this choice leads to intolerable or absurd results, a factor that would have given us pause in applying § 3–419(3) in accordance with its terms.[5]

Accordingly, we conclude that *N.J.S.A.* 12A:3–419(3) recognizes that a depositary or collecting bank handling a forged check in the routine process of check collection acts in a representative capacity on behalf of its customer, who may be one other than the check's true owner or payee. Consequently, such a bank will not be disqualified from claiming, as a "representative," immunity against the owner-payee under *N.J.S.A.* 12A:3–419(3).

## III

A further argument against granting immunity is drawn from the provision of § 3–419(3) that a depositary bank dealing with a check bearing a forged indorsement cannot be liable to the true owner "beyond the amount of any proceeds remaining in [its] hands." It can be contended that the proceeds of the checks should be considered as still in the control of Central Jersey, thus rendering the bank liable.

---

[5]It is possible that the burdensome circuitous litigation deplored by many commentators may be mitigated today. The "circuity argument" has been criticized as being exaggerated and inconsequential in the modern era of long-arm jurisdiction, negotiated settlements, and liberal rules of impleader. *See J. White and R. Summers, Handbook of the Law Under the Uniform Commercial Code,* § 15–4 at 590–91 (1980). In addition, foreclosing a direct suit against a depositary bank and, instead, forcing the payee to sue his drawer or the drawee bank preserves in some instances the timely presentation of appropriate defenses that would have been unavailable to a depositary bank, such as that of the drawer's negligence in causing or detecting the forgery. *See* "Recent Developments—Section 3–419(3) of the U.C.C. Does Not Limit the Liability of a Depositary Bank to the True Owner of a Check Paid on a Forged Indorsement," 74 *Colum.L.Rev.* 104, 114 (1974); Comment, 5 *Rut.—Cam.L.J.* 319, 332 (1974). *But see* Hinchey, "An Analysis of Bank Defenses to Check Forgery and Alteration Claims under Uniform Commercial Code Articles 3 and 4: Claimants' Negligence and Failure to Give Notice," 10 *Pepperdine L.Rev.* 1, 5–6 (1982); Note, "Depositary Bank Liability under § 3–419(3) of the Uniform Commercial Code," 31 *Wash. & Lee L.Rev.,* 676, 696 n. 107 (1974).

This theory of retained proceeds was first advanced in *Ervin v. Dauphin Deposit Trust Co., supra*, 3 *U.C.C.Rep.* 311. The Pennsylvania court rendered judgment to the plaintiff-payee, finding the defense of § 3–419(3) unavailing to the depositary bank. One ground of its decision was that although the bank had already paid over the full amount of the checks to the forger, it nonetheless still retained the "proceeds" in its hands, having in effect purchased with its *own* funds the forged checks drawn on other banks. As a result, the proceeds remained in its hands as money obtained from the drawee bank that belonged to the true owner. 3 *U.C.C.Rep.* at 319.

In *Cooper v. Union Bank, supra*, 9 *Cal.*3d 371, 507 *P.*2d at 613, 107 *Cal.Rptr.* 1, the court noted that the trial court had held the defendant depositary banks immune under § 3–419(3). It reversed, although offsetting the aggregate recovery to reflect the plaintiff's own contributory negligence. *Id.*, 9 *Cal.* 3d 371, 507 *P.*2d at 620, 107 *Cal.Rptr.* 1. As partial support for this result, the court, relying on pre-UCC theory, observed that the bank still held the entire "proceeds" of the forged instruments, notwithstanding the fact that the forger's personal account with the bank in which the forged checks had been deposited was depleted. The court reasoned that the bank perpetually retains the proceeds of the forged instrument in trust for the true owner, unless the bank's own assets dwindle below the amount of the check. *Id.*, 9 *Cal.*3d 371, 507 *P.*2d at 615, 107 *Cal.Rptr.* 1.

The "retained proceeds" position of *Ervin* and *Cooper* has generated considerable academic debate. *See, e.g.*, Comment, 45 *U.Colo.L.Rev., supra*, at 292–307 (approving the *Ervin-Cooper* view on the basis of reasonable commercial standards and not retained proceeds); Comment, 25 *Hastings L.J., supra*, at 730–31 (criticizing the argument as circular); Dugan, "Stolen Checks—the Payee's Predicament," 53 *Boston U.L.Rev.* 955, 975–79 (1973) (disapproving the argument as emasculating the plain meaning of the statute without precedential support); Comment, 18 *Houston L.Rev., supra*, at 194 (criticizing *Cooper* court definition of proceeds as rendering § 3–419(3) useless in

the check collection process); Note, "Depositary Liability under § 3–419(3) of the Uniform Commercial Code," 31 *Wash. & Lee L.Rev.* 676, 697–98 (1974) (legal analysis of "proceeds" by *Ervin* and *Cooper* courts improper); "Recent Developments— Section 3–419(3) of the U.C.C. Does Not Limit the Liability of a Depositary Bank to the True Owner of a Check Paid on a Forged Indorsement," 74 *Colum.L.Rev.* 104, 112 (1974); *see also* Annot., "Payee's Right to Recovery, in Conversion under UCC § 3–419(1)(c), for Money Paid on Unauthorized Indorsement," 23 *A.L.R.*4th 855, § 4 at 863 (1983). Courts have resorted to the theory sparingly. *See generally* Comment, 18 *Houston L.Rev.*, *supra*, at 192–94. The Appellate Division rejected the theory of perpetually retained proceeds (188 *N.J. Super.* at 407–08), as did the courts in *Jackson Vitrified China*, *supra*, 388 *So.*2d at 1061; *Denn*, *supra*, 316 *N.W.*2d at 537; and *Moore v. Richmond Hill Savings*, *supra*, 120 Misc.2d 488, 466 *N.Y.S.*2d at 133. We concur.

"Proceeds" is that amount received from the drawee-payor bank in return for the check of its drawer.[6] *See* Comment, 5 *Rut.—Cam.L.J.* 319, 323 (1974); Comment, 45 *U.Colo.L.Rev.*, *supra*, at 293. Remaining proceeds as used in § 3–419(3), we believe, connotes the amount, if any, the bank actually has left in its control as a consequence of dealing with the forged check. Thus, a bank could give the customer a provisional credit,[7] which prevents the customer from withdrawing or obtaining

---

[6]The only definition of the term "proceeds" in the UCC appears at § 9–306(1):

"Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. * * * Money, checks, deposit accounts, and the like are "cash proceeds." All other proceeds are "noncash proceeds." [*N.J.S.A.* 12A:9–306(1).]

This Article Nine definition, however, was not incorporated into Article Three of the Code. *See N.J.S.A.* 12A:3–102.

[7]"Provisional credit" means that the depositary bank places a "hold" on the customer's account and refuses to allow any credit given for the item to be withdrawn before collection is made and the depositary bank has received the

actual credit for the instrument until the bank has effected collection. In that case, the bank would be liable under § 3–419(3) to the owner of the check for the amount, whether full or partial, of the check that remains on deposit in the account of the forger or his transferee. *See* Farnsworth and Leary, "UCC Brief No. 10: Forgery and Alteration of Checks," 14 *Prac.Law.* No. 3 at 75, 79–80 (1968); *see also* Comment, 45 *U.Colo.L.Rev., supra,* at 304 n. 89; Comment, *supra,* 74 *Colum.L.Rev., supra,* at 113; *Denn, supra,* 316 *N.W.*2d at 537.

█ In this case, plaintiff has not shown that any funds attributable to the forged instruments are still available in the customer's account. The checks were deposited in the account of the Cerrato law firm, the bank's customer and the transferee of the forger. In due course, the forged checks were transmitted for collection and the proceeds remitted. The funds or proceeds referable to these checks reflected in the customer's account were eventually withdrawn and the account ultimately depleted accordingly. Consequently, no proceeds remain for which this bank can be liable under § 3–419(3).

## IV

In conclusion, we are satisfied that the Court may not disregard the plain language of *N.J.S.A.* 12A:3–419(3). The terms of this provision clearly and unmistakably designate a depositary or collecting bank as a representative in the collection of a forged check. We are mindful of the objections to that interpretation. Nevertheless, we must infer that these objections were not ultimately important or persuasive to the Legislature. We rule therefore that generally a depositary or collecting bank handling a forged check in the routine collection process may claim immunity against the true owner or payee under *N.J.S.A.* 12A:3–419(3). That immunity may be lost, however, under certain circumstances. A depositary or collecting bank may

proceeds from the drawee/payor bank. Comment, 45 *U.Colo.L.Rev., supra,* at 304.

become directly liable to an owner-payee in conversion of a forged check where it (1) acted in bad faith; (2) failed to adhere to reasonable commercial standards of the banking profession applicable to such transactions; or (3) had given a provisional credit to the forger or his transferee and had not yet disbursed the entire amount of the collected proceeds.

None of these enumerated circumstances is present in the instant case. Accordingly, the judgment of the Appellate Division is reversed and summary judgment for the defendant reinstated.

*For reversal* —Chief Justice WILENTZ and Justices CLIFFORD, POLLOCK, HANDLER and GARIBALDI—5.

*For affirmance* —None.