JOSEPHINE MOORE, Appellant, v RICHMOND HILL SAVINGS BANK, Respondent, et al., Defendant.

Second Department, April 28, 1986

---

**APPEARANCES OF COUNSEL**

*Miller & Fink, P. C. (Stephen David Fink* of counsel), for appellant.

*Ralph M. Elbaum* for respondent.

**OPINION OF THE COURT**

KUNZEMAN, J.

The main issue presented by this appeal is whether a "depositary" or "collecting" bank is liable for conversion pursuant to UCC 3-419 (1) (c) and in a common-law action for moneys had and received when it has paid out funds on a forged indorsement on a stolen check or draft. We agree with both the Appellate Term and the Civil Court that, in this case, the defendant Richmond Hill Savings Bank (hereinafter Richmond Hill) is not liable to the plaintiff, the rightful payee of the stolen draft, for paying out funds on the instrument over a forged indorsement of the plaintiff's signature.

The plaintiff and the defendant Richmond Hill presented this case on stipulated facts *(see, Moore v Richmond Hill Sav. Bank,* 120 Misc 2d 488). The defendant Taramatie De Dios never appeared in this action, thereby defaulting *(see, Moore v Richmond Hill Sav. Bank, supra).* The plaintiff sold a condominium in Jamaica, West Indies, in August 1981, with the

purchase price to be paid in installments. A draft for the first installment of $3,444.58, drawn by the Royal Bank of Jamaica on the Marine Midland Bank (hereinafter Marine Midland) in New York City, was mailed to the plaintiff's attorneys. Apparently, the proceeds of the sale of the condominium were to be paid in bank drafts forwarded to the plaintiff's attorneys, Miller & Fink, P. C. However, the defendant De Dios apparently intercepted the draft, forged the indorsement of the plaintiff, and deposited the check into her (De Dios') account at Richmond Hill. It is undisputed that the defendant bank acted in good faith and in accordance with reasonable commercial standards. Richmond Hill subsequently collected $3,444.58 from the drawee bank, Marine Midland, and credited that amount to the account of the defendant De Dios who subsequently withdrew the funds. It is further undisputed that the defendant bank had no account in the plaintiff's name and, therefore, no signature card or any other evidence of the plaintiff's signature. The defendant bank's only connection with any party herein is with the defendant De Dios who has defaulted. Richmond Hill did not pay out the proceeds of the draft to the defendant De Dios until the collection process was complete, that is, when it had collected the funds from Marine Midland, and, upon such payment, none of the proceeds of the draft remained in its possession. The draft did not contain a restrictive indorsement and it never came into the possession of either the plaintiff or her attorneys until after the funds were paid out to the defendant De Dios. Eventually, the plaintiff learned of the interception of the check and the forgery of her indorsement and notified all of the proper parties. In her complaint, the plaintiff alleged that the defendant bank was negligent in failing to detect the forged indorsement, but failed to specifically charge the defendant bank with conversion under UCC 3-419 (1) (c).

The Civil Court (Sacks, J.) (see, Moore v Richmond Hill Sav. Bank, 120 Misc 2d 488, supra) initially held that, even though the plaintiff failed to specifically allege conversion, she could rely on any theory of recovery supported by the facts, including conversion and a common-law contract claim for money had and received since the defendant bank was given notice in the complaint of its allegedly improper conduct. The court then stated that, while under common law a depositary or collecting bank such as Richmond Hill was held strictly liable to the rightful owner of the draft for paying out the proceeds of the draft over a forged indorsement, regardless of whether

it acted in good faith or in accordance with reasonable commercial standards, UCC 3-419 (3) provides that if a bank, which acted in good faith and in accordance with reasonable commercial standards, no longer holds "proceeds" from the negotiable instrument, such depositary or collecting bank is absolved from liability to the rightful owner of the instrument. Additionally, the court noted that the depositary or collecting bank can remain liable for negotiating the forged instrument if the plaintiff sues the drawer for the original debt, the drawer then sues the drawee bank for failing to pay the draft pursuant to UCC 3-413 (1) and the drawee bank, in turn, sues the collecting bank for breach of warranty pursuant to UCC 4-207 (1) (a). Since such litigation would be more complex due to its circuitous nature, but the liability of the depositary or collecting bank would remain the same (i.e., the depositary or collecting bank would ultimately be liable for damages), the court stated that the chain of liability could be broken if the drawer was negligent or the drawee (payor) bank waived or failed to assert valid defenses against the drawer. Finally, the court held that a depositary or collecting bank, acting in good faith and in accordance with reasonable commercial standards, has a valid defense, even to a common-law contract action for money had and received, because UCC 3-419 (3) provides that such banks are not liable to the true owner "in conversion or otherwise * * * beyond the amount of any proceeds remaining in [the bank's] hands".

The Appellate Term affirmed, specifically noting that the parties had stipulated that the defendant bank acted in good faith and in accordance with reasonable commercial standards (cf. *Tette v Marine Midland Bank,* 78 AD2d 383, *appeal dismissed* 54 NY2d 681) and that it was not unaware of different approaches adopted by courts in other jurisdictions.

■ Initially, the defendant bank argues that the plaintiff cannot assert a cause of action sounding in conversion pursuant to UCC 3-419 (1) (c) because it was not specifically pleaded in the complaint. However, as pleadings may be conformed to the proof presented and parties are not necessarily bound by technical inaccuracies in their pleadings (see, e.g., *Diemer v Diemer,* 8 NY2d 206), the plaintiff may validly assert a cause of action sounding in conversion pursuant to UCC 3-419 (1) (c) and also plead a common-law contract cause of action for money had and received (see, e.g., *Hechter v New York Life Ins. Co.,* 46 NY2d 34; *Henderson v Lincoln Rochester Trust Co.,* 303 NY 27).

UCC 3-419 (1) (c) provides, in pertinent part, that "[a]n instrument is converted when * * * it is paid on a forged indorsement" and liability therefor has been universally imposed on *payor* banks *(see, e.g.,* White & Summers, Uniform Commercial Code § 15-4, at 596 [2d ed]; Ann., 23 ALR4th 855, 858). However, UCC 3-419 (3) provides a defense to "depositary" or "collecting" banks which initially receive the instrument containing the forged indorsement, collect the proceeds from the "payor" bank, and then pay them out. In this case, both the Royal Bank of Jamaica and Marine Midland are payor banks while the defendant Richmond Hill is a depositary or collecting bank since it apparently collected the funds from Marine Midland to pay the draft. UCC 3-419 (3) provides as follows: "Subject to the provisions of this Act concerning restrictive indorsements a representative, *including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative* dealt with an instrument or its proceeds on behalf of one who was not the true owner *is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands"* (emphasis added).

The Comments to UCC 3-419 support the view that depositary or collecting banks are not to be held liable when they pay out funds on forged indorsements where they retain no proceeds from the instrument and act in good faith and in accordance with reasonable commercial standards. Comment 5 states: "Subsection (3), which is new, is intended to adopt the rule of decisions which has held that a representative, *such as a broker or depositary bank, who deals with a negotiable instrument for his principal in good faith is not liable to the true owner for conversion of the instrument or otherwise, except that he may be compelled to turn over to the true owner the instrument itself or any proceeds of the instrument remaining in his hands.* The provisions of subsection (3) are, however, subject to the provisions of this Act concerning restrictive indorsements" (emphasis added).

Comment 6 adds: "The provisions of this section are not intended to eliminate any liability on warranties of presentment and transfer (Section 3-417). Thus a collecting bank might be liable to a drawee bank which had been subject to liability under this section, *even though the collecting bank might not be liable directly to the owner of the instrument"* (emphasis added).

The Comments to UCC 3-419 (3) clearly show that its drafters intended to limit the liability of depositary or collecting banks which pay out on instruments containing forged indorsements. The leading treatise, White & Summers, Uniform Commercial Code (§ 15-4, at 596 [2d ed]) supports the analysis that, although an owner or payee of an instrument has a cause of action against a drawee (payor) bank which pays on a forged indorsement, the same owner or payee will be able to maintain an action against a depositary or collecting bank only if that bank "cashed the check over a restrictive indorsement * * * and applied the proceeds in a way contrary to that indorsement", if "[t]he depositary bank still has the proceeds in its hands", or if "[t]he depositary bank did not act in accordance with reasonable commercial standards". It would, therefore, seem apparent that, in the case at bar, where the instrument carried no restrictive indorsement and it is undisputed that the defendant bank has not retained any of the proceeds from the instrument and has acted in good faith and in accordance with reasonable commercial standards, the defendant bank cannot be held liable to the plaintiff for conversion or for moneys had and received.

Some courts have found the depositary or collecting bank liable by finding that it has failed to act in accordance with reasonable commercial standards (see, e.g., *Tette v Marine Midland Bank, supra* [depositary or collecting bank provided no evidence that it acted in accordance with reasonable commercial standards]; *Belmar Trucking Corp. v American Trust Co.,* 65 Misc 2d 31 [depositary or collecting bank failed to act in accordance with reasonable commercial standards because it accepted a check indorsed by a corporate payee for deposit in a third person's account]; *Salsman v National Community Bank,* 102 NJ Super 482, 246 A2d 162, *affd* 105 NJ Super 164, 251 A2d 460 [depositary or collecting bank negligently paid despite a restrictive indorsement]; *see also,* White & Summers, Uniform Commercial Code § 15-4, at 592, nn 23, 24 [2d ed]). Other courts have employed complex reasoning to hold the depositary or collecting bank liable to the true owner of the instrument, despite the apparently clear language of the UCC and its intent as expressed in the Comments to UCC 3-419. The Supreme Court of California (see, *Cooper v Union Bank,* 9 Cal 3d 371, 507 P2d 609), by using certain elements of pre-UCC law, reasoned that a depositary or collecting bank held the "proceeds" of the check for the true owner's benefit as if it were a constructive trustee. The court held that the bank had

actually used its own funds when it paid the amount of the check to the forger and, thus, never parted with the proceeds of the check, even though the collection and payment process had been completed. Moreover, the court noted that direct actions against the depositary or collecting bank would eliminate circuitous litigation of the true payee or owner suing the payor bank who, in turn, sues the depositary or collecting bank.

Another approach was found in reasoning that the "representative" defense of UCC 3-419 (3) (which specifically applies to "a representative, including a depositary or collecting bank"), did not apply to banks because, under pre-UCC law, only investment brokers dealing in marketable securities and similar entities were considered to be "representatives". Such reasoning is based on the supposition that the drafters of the UCC did not specifically intend to extend this "representative" status and defense to depositary or collecting banks *(see, Ervin v Dauphin Deposit Trust Co.,* 38 Pa D & C 2d 473; *see also, Sherriff-Goslin Co. v Cawood,* 91 Mich App 204, 283 NW2d 691; *Tubin v Rabin,* 389 F Supp 787, *affd* 533 F2d 255; Ann., 23 ALR4th 855).

According to White & Summers, Uniform Commercial Code § 15-4, at 591-594 (2d ed), the critics of UCC 3-419 (3) believe that, since the depositary or collecting bank will ultimately bear the loss because it will eventually be sued by the payor bank, payees should be permitted to sue the depositary bank directly. Said critics also believe that the depositary or collecting bank is the most convenient party for payees to sue since, in many cases, the forged checks will have been drawn on many different banks and the depositary or collecting bank is usually a local bank in contrast to the payor bank which is usually distant.

Many courts have rejected such approaches upon the ground that the drafters of the UCC could not have contemplated such strained interpretations of the terms "proceeds" and "representative", especially in light of Comment 6 which specifically provides that "[a] collecting bank might not be liable directly to the owner of the instrument". Thus, the drafters of the UCC evinced an intent to extend the protection against lawsuits which, under pre-UCC law, was only available to investment brokers, to bankers as well and to limit common-law direct actions against depositary or collecting banks *(see, Jackson Vitrified China Co. v People's Am. Natl. Bank,* 388 So 2d 1059 [Fla App]; *Hydroflo Corp. v First Natl.*

*Bank,* 217 Neb 20, 349 NW2d 615). In *Denn v First State Bank* (316 NW2d 532 [Minn]), the Supreme Court of Minnesota analyzed the legislative history of UCC 3-419 (3). The 1949 draft of the UCC applied the "representative" exception to brokers only but in 1951 the drafters added "depositary banks" to the exception. Comments 5 and 6 to the section both clearly state that depositary banks are exempt from liability unless they fail to act in accordance with reasonable commercial standards or, in good faith, pay out over a restrictive indorsement, or still have proceeds in their hands. The Supreme Court of Minnesota further stated that "[t]he fact that the phrase 'such as a broker or *depositary bank'* [emphasis added] is used to describe [the term] representative strongly suggests that the drafters intended to expand the scope of the common-law exception for brokers" *(Denn v First State Bank, supra,* at p 535). The court also observed that Comment 6 indicated that a depositary bank might not be liable to a payee.

In *Knesz v Central Jersey Bank & Trust Co.* (97 NJ 1, 10, 477 A2d 806, 810), the Supreme Court of New Jersey held that "[UCC] § 3-419 (3) protects a 'representative, including a depositary or collecting bank, who has * * * dealt with an instrument or its proceeds *on behalf of one who was not the true owner'* ". That court held that the UCC specifically contemplated that a depositary or collecting bank could act as a representative of one who is not the true owner of an instrument. The court further stated that, while other courts may have held to the contrary, the language of the section immunizes the depositary or collecting bank from strict liability to a payee. It agreed that Comment 5 to the section shows that the drafters clearly intended that common-law decisions absolving brokers from strict liability are to be extended to depositary banks. Finally, the court reasoned that once the collection process is complete the depositary or collecting bank no longer has any proceeds in the customer's account.

The New York Court of Appeals has never decided the issue of whether depositary or collecting banks can be held directly liable to payees. In *Hutzler v Hertz Corp.* (39 NY2d 209, 217, n 3), the Court of Appeals specifically declined to decide the issue of whether, despite the enactment of UCC 3-419 (3), the plaintiff could maintain an action against the depositary or collecting bank sounding in conversion or a common-law action sounding in breach of contract when it has paid out the proceeds of the instrument upon a forged indorsement of the

payee's name. However, the court subtly noted that several courts "have held depositary and collecting banks liable for conversion *despite what appears to be a clear immunization from such liability in subdivision 3 of section 3-419" (supra,* p 217, n 3; emphasis added).

Similarly, in *Hechter v New York Life Ins. Co.* (46 NY2d 34, *supra),* the Court of Appeals declined to decide the issue. The court did hold that the six-year contract Statute of Limitations applied in such cases because the enactment of the UCC did not eliminate the pre-UCC common-law contract action for wrongful collection of checks (money had and received). However, once again, the court stated: "While we express no opinion on the question, we note that a number of courts have already held depositary or collecting banks liable in situations analogous to the instant one (see, e.g., *Cooper v Union Bank,* 9 Cal 3d 371; see, generally, White and Summers, Uniform Commercial Code, § 15-4, pp 499-509; Comment, Payee v. Depositary Bank: What is the UCC Defense to Handling Checks Bearing Forged Indorsements?, 45 U Col L Rev 281, 289-304), *despite the immunization language in subdivision (3) of section 3-419.* Since defendant has not raised this issue, we decline to reach it at this time" *(Hechter v New York Life Ins. Co., supra,* at p 38, n 3; emphasis added).

The *Hechter* court added that "it is a general rule of statutory construction that a clear and specific legislative intent is required to override the common law" *(Hechter v New York Life Ins. Co., supra,* at p 39). Virtually all of the non-New York cases rejecting approaches which would hold depositary or collecting banks liable were decided subsequent to both *Hutzler (supra)* and *Hechter.* Later case law in the lower courts of New York appears to be in a state of flux. In *Tette v Marine Midland Bank* (78 AD2d 383, 385, *supra),* the Appellate Division, Fourth Department, apparently subscribed to the view expressed by Professors White and Summers that a depositary or collecting bank can be held liable to a payee only in very limited circumstances, that is, when it pays out funds over a restrictive indorsement, actually retains proceeds, or fails to act in accordance with reasonable commercial standards. However, in *Sonnenberg v Manufacturers Hanover Trust Co.* (87 Misc 2d 202, 205), the Supreme Court, New York County (Baer, J.), intimated that the depositary or collecting bank could be subject to direct liability under the UCC. In *Colonna & Co. v Citibank* (105 Misc 2d 78, *revd on other grounds* 86 AD2d 789), the Supreme Court, New York

County (Stadtmauer, J.), found liability, since the depositary or collecting bank, in the court's opinion, retained proceeds for the benefit of the true owner of the instrument. That court raised the policy ground of avoiding circuitous litigation where the depositary or collecting bank would ultimately be held responsible for the forged indorsement, and added that the depositary or collecting bank has the last and best opportunity to discover a forgery.

We are of the belief that the clear language of the UCC, as elaborated in Comments 5 and 6 to UCC 3-419, indicates that depositary or collecting banks are absolved from liability to payees or the true owners of negotiable instruments unless such banks pay out over a restrictive indorsement, actually retain proceeds of the instrument in the customer's account (i.e., the forger's account), or fail to act in good faith or in accordance with reasonable commercial standards. The statute clearly denominates a depositary or collecting bank as a "representative" and absolves such banks from liability "in conversion or otherwise" (UCC 3-419 [3]), indicating that, except for the specific aforementioned situations where depositary or collecting banks are held liable, such banks are immune from liability to a payee for conversion or in a common-law action sounding in breach of contract for money had and received. The view that a depositary or collecting bank holds proceeds for the benefit of the payee even after the collection process has been completed is not in line with common sense and reality because the bank retains no proceeds once the collection and payment process has been completed. This is especially true in the case at bar since the defendant De Dios withdrew all of the funds from her account at Richmond Hill. We add that New York annotation (3) to UCC 3-419 (McKinney's Cons Laws of NY, Book 62½, at 372), states that UCC 3-419 (3) protects depositary or collecting banks "from liability in conversion, subject to the indicated exceptions. *The subsection is consistent with the rule under the N.I.L. [Negotiable Instruments Law] with respect to good faith brokers dealing in negotiable securities.* See, Gruntal v. National Surety Co., 254 N.Y. 468, 173 N.E. 682 (1930)" (emphasis added). Although the Court of Appeals in the *Hutzler* and *Hechter* cases *(supra)* declined to decide the issue presented here, the court in both cases indicated that the language of the statute clearly immunizes depositary or collecting banks from liability. The fact that circuitous litigation may result because the payee must first bring an action against the payor

bank or banks is of no moment, since the chain of liability may be broken due to the negligence or wrongful actions of the drawer or the payor banks, i.e., where the drawer's negligence causes the forgery, the drawer neglects to report the forgery or the payor bank waives or fails to assert a valid defense against the drawer (see, UCC 3-406, 4-406). We cannot ignore the clear intent to absolve depositary or collecting banks from direct liability to payees except under certain limited circumstances, despite public policy arguments which suggest that the statute should be applied in a manner contrary to its clear intent.

In the case before us, it is undisputed that the draft contained no restrictive indorsement and that the defendant bank acted in good faith and in accordance with reasonable commercial standards. Further, the bank retains no proceeds in the customer's account. Therefore, based upon the aforementioned factors, the order of the Appellate Term which affirmed the judgment of the Civil Court granting the defendant bank's motion for summary judgment dismissing the plaintiff's complaint insofar as it is asserted against it, should be affirmed. We note that it appears that the defendant bank had no way to detect the forgery as it had no evidence of the plaintiff's signature on record, and its only connection with any of the parties involved herein was with the defendant De Dios who had an account at the bank. The only signature it knew or could check was the signature of the defendant De Dios.

The defendant bank's argument that the plaintiff's failure to provide either the Royal Bank of Jamaica or Marine Midland with a signature card or other evidence of her signature, and her failure to take other action which could have prevented the forgery of her indorsement, constituted negligence (see, UCC 3-406), need not be decided in light of our determination on this appeal. While proof of such negligence would certainly absolve the defendant bank of any liability, such proof would have to be developed at a trial or through discovery (see, e.g., Five Towns Coll. v Citibank, 108 AD2d 420).

GIBBONS, J. P., NIEHOFF and RUBIN, JJ., concur.

Upon appeal by permission, order of the Appellate Term of the Supreme Court, Second and Eleventh Judicial Districts, dated July 13, 1984, affirmed, with costs.