Bruce H. Kaplan AS TRUSTEE OF TRUST(S) U/W/O MARILYN KAPLAN, BRUCE H. KAPLAN, Plaintiffs,

against
Valley National Bank, FIDELITY NATIONAL TITLE INSURANCE COMPANY, MARTIN H. BODIAN, ESQ., C.P.A., BODIAN AND BODIAN, LLP, Defendants.


611107-15

BRUCE H. KAPLAN, ESQ.
Plaintiff Pro Se
FORCHELLI, CURTO, DEEGAN, SCHWARTZ, MINEO & TERRANA, LLP
Attorneys for Defendant Valley National Bank
333 Earle Ovington Boulevard, Suite 1010
Uniondale, New York 11553
FIDELITY NATIONAL LAW GROUP
Attorneys for Defendant Fidelity National Title Insurance Company
350 Fifth Avenue, Suite 3000
New York, New York 10118
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
Attorneys for Defendants Martin H. Bodian, Esq., C.P.A., and Bodian and Bodian, LLP
150 East 42nd Street New York, New York 10017


Elizabeth H. Emerson, J.

Upon the following efiled documents read on these motions to dismiss ; Notice of Motion and supporting papers 15-55; 61-66; 70-75 ; Notice of Cross Motion and supporting papers; Answering Affidavits and supporting papers 58-59; 76-81; 86-88 ; Replying Affidavits and supporting papers 67-69; 89-91; 93-96; Other 97-100 ; and after hearing counsel in support of and opposed to the motion, it is,
ORDERED that these motions by the defendants for an order dismissing the complaint are granted.
The plaintiff's mother, Marilyn Kaplan, executed a will in 1994, leaving her interest in the home that she shared with her husband, Donald, in trust to him and giving him a life estate therein (the "Jericho property"). She also left approximately $250,000 in cash and securities (the "Family Part Sum") in trust to Donald to be used for his benefit. She appointed Donald and their two sons, Bruce and Daniel, as the trustees. Bruce and Daniel were also the remaindermen of the trust. The trust allowed Donald to withdraw up to 5% of the principal each year and allowed Bruce and Daniel to make discretionary withdrawals to ensure that Donald enjoyed the same standard of living that he enjoyed when Marilyn's will was executed in 1994. Marilyn died shortly after executing the will. By 2005, the Family Part Sum was depleted and, except for the real property, there was no principal remaining in the trust. 
The Jericho property was sold in 1997, and the trust used the proceeds of the sale to purchase a home in Melville, New York, which was sold in 2003. The trust used the proceeds of the second sale to purchase a two-thirds interest in another home in Melville (the "Altessa property"), the one-third owner of which was Donald's second wife, Elaine Britvan. Elaine died in 2012, and the Altessa property was sold in 2013 for $1.33 million. Bruce was not advised of the sale. After the closing costs were paid, the proceeds of the sale were divided as follows: $174,310.28 to Bank of America to satisfy a mortgage on the property, $670,494.39 to the trust, and $422,410.33 to the Britvan estate. Donald and Daniel then opened a new trust account at Valley National Bank (the "Valley National account" or "trust account") without making Bruce a signatory thereon and without disclosing to the bank that Bruce was a beneficiary and trustee of Marilyn's trust. They deposited $670,494.39 into that account.[FN1]
In January 2014, $83,500 was transferred from the Valley National account to Donald's personal account. When Donald died in September 2014, there was approximately $588,000 remaining in the Valley National account. The balance was distributed to Bruce and Daniel pursuant to the terms of Marilyn's will. On [*2]December 5, 2014, Bruce and Daniel executed a mutual release acknowledging their receipt of $212,500 and $360,500, respectively, and releasing each other from any and all claims with respect to the trust's principal and accumulated interest. $15,000 was held in escrow to pay, inter alia, legal fees and other expenses. After the escrow was released, Bruce received another $6,500 for a total of $219,000.[FN2]

Bruce, individually and as a trustee of Marilyn's trust, (the "plaintiff"), commenced this action in 2015 against Valley National Bank ("Valley National"); Fidelity National Title Insurance Company ("Fidelity"), the underwriter of the title insurance policy issued to the purchasers of the Altessa property; and Martin Bodian and, his law firm, Bodian and Bodian, LLP (the "Bodian defendants"), who represented the sellers of the Altessa property (i.e, the trust and the Britvan estate). The plaintiff seeks to hold the defendants liable for assisting Donald and Daniel's purported diversion of the proceeds of the sale of the Altessa property to Bank of America and to the Valley National account under a variety of legal theories. Valley National moves to dismiss the complaint pursuant to CPLR 3211 (a) (1), (7), and (10); the Bodian defendants pursuant to CPLR 3211 (a) (1), (3), (5), (7) and (10); and Fidelity pursuant to CPLR 3211 (a) (1).
The plaintiff's theory of the case is as follows: Marilyn's will created two trusts, i.e, the Family Part Sum Trust, consisting of cash and securities worth approximately $250,00, and the House Trust, consisting of the marital home in Jericho, New York, worth approximately $325,000. Upon Marilyn's death, title to the marital home passed to the House Trust, and Donald was granted a life-estate in the home. Marilyn's will directed that the Family Part Sum Trust be used for Donald's benefit. By the time of Donald and Elaine's wedding in 2005, there was no principal remaining in the Family Part Sum Trust. In mid-2008, Martin Bodian approached the plaintiff about taking out a reverse mortgage on the Altessa property in order to obtain cash for Donald from the House Trust. The plaintiff contends that, when he rejected Bodian's plan, the Bodian defendants began a campaign on Donald's behalf to siphon equity from the Altessa property for Donald's personal use, culminating in the undisclosed sale of the property and diversion of the proceeds of the sale to Bank of America (to pay off the mortgage) and to the Valley National account. That account was opened by Donald and Daniel as the "Family Part Sum Trust under Will of Marilyn Kaplan" without naming the plaintiff as either a trustee or a beneficiary, putting the proceeds of the sale of the Altessa property beyond the reach of the House Trust. The plaintiff seeks to recover an additional $203,702.33 from the sale, which he calculates as follows: $844,404.67 for the trust's two-thirds share of the proceeds of the sale of the Altessa property, half of which is $422,202.33, minus the $218,500 that he received.[FN3]

The complaint contains nine causes of action against Valley National, Fidelity, and the Bodian defendants. The first, second, and third causes of action are against Valley National for conversion under UCC 3-419, for negligence, and for money had and received. The fourth and fifth causes of action are against all of the defendants for common-law conversion and for aiding and abetting conversion. The sixth and seventh causes of action are against the Bodian defendants and Fidelity for tortious interference with Marilyn's will and trust and for negligence. The eighth and ninth causes of action are against the Bodian defendants for malpractice and for violation of Judiciary Law § 487.
UCC 3-419
UCC 3-419 provides, in pertinent part, as follows:
(1) An instrument is converted when (a) a drawee to whom it is delivered for acceptance refuses to return it on demand; or (b) any person to whom it is delivered for payment refuses on demand either to pay or to return it; or (c) it is paid on a forged indorsement. 
(2) In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument.
(3) Subject to the provisions of this Act concerning restrictive indorsements, a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.
The plaintiff contends that Valley National violated UCC 3-419 by accepting a check for deposit from the buyers of the Altessa property in the amount of $623,506.39 without an indorsement, obtaining payment from the payor bank, and allowing third parties to draw against the funds. The plaintiff contends that payment on a check without an indorsement is analogous to payment on a forged indorsement under UCC 3-419 (1) (c), that Valley National did not act in a commercially reasonable manner by accepting the check without an indorsement, and that the check was not properly payable under UCC 4-401. The plaintiff contends that Valley National is, therefore, strictly liable in conversion for the face amount of the check.
UCC 3-419 (1) (c), upon which the plaintiff relies, does not define to whom a party paying on a forged indorsement is liable (State of New York v Barclays Bank of NY, 151 AD2d 19, 23, affd 76 NY2d 533). It does, however, limit the liability of depositary and collecting banks in conversion or otherwise to the "true owner" (Id., citing UCC 3-419 [c]). The [*3]official comments to UCC 3-419 explain that a negotiable instrument is the property of the holder (Id., citing UCC 3-419, official comment 2). A "holder" is "a person who is in possession of...an instrument issued or indorsed to him or to his order or to bearer or in blank" (UCC 1-201 [20]). Thus, to allow the payee of a check to recover under UCC 3-419 as its true owner, he must have had possession of the instrument (State of New York v Barclays Bank of NY, supra at 23). The named payee must receive actual or constructive delivery of the check upon which he brings suit in order to maintain an action against the depositary bank that paid the check on a forged indorsement (Id. at 23-24). 
The named payee of the $623,506.39 check was the "Trust Under Will Of Marilyn Kaplan." The check was not issued or indorsed to the plaintiff, nor was it in his possession before it was deposited into the Valley National trust account. Thus, the "true owner" of the check was not the plaintiff, but the payee trust. It is the trust, and not the plaintiff individually, that has standing to sue Valley National under UCC 3-419. Moreover, the plaintiff may not maintain this action as a trustee on behalf of the trust. When, as here, there are two surviving fiduciaries and nothing to the contrary in the will, the two fiduciaries must act together (see, EPTL 10-10.7). Since the plaintiff may not act alone on the trust's behalf, he does not have standing to maintain this action against Valley National under UCC 3-419. 
In any event, depositary and collecting banks are absolved from liability to payees or true owners of negotiable instruments unless (1) they pay out over a restrictive indorsement, (2) they actually retain proceeds of the instrument in the customer's account, or (3) they failed to act in good faith or in accordance with reasonable commercial standards (UCC 3-419 [c]; Moore v Richmond Hill Sav. Bank, 117 AD2d 27, 36). Except for these three situations, none of which apply here, depositary and collecting banks are immune from liability to a payee for conversion, breach of contract, and money had and received (Id.). The $623,506.39 check contained no restrictive indorsements. After Donald died in September 2014, the funds remaining in the Valley National account were distributed to Bruce and Daniel pursuant to the terms of Marilyn's will. Thus, Valley National did not retain any of the proceeds of the check in the trust account. Moreover, contrary to the plaintiff's contentions, Valley National dealt with the check in good faith and in accordance with reasonable commercial standards. 
"Good faith" is defined as "honesty in fact in the conduct or transaction concerned" (UCC 1-201 [20]). The record does not reflect any dishonesty on Valley National's part in the handling of the check. UCC 4-205 (1) allows a depositary bank that has taken an item for collection to supply the missing indorsement of its customer, as long as the item does not contain words like "payee's indorsement required." The statute expressly provides that a statement placed on an item by a depositary bank to the effect that the item was deposited by a customer or credited to his account is effective as the customer's indorsement (Marine Midland Bank v Price, Miller, Evans & Flowers, 57 NY2d 220, 226).
The $623,506.39 check was payable to the order of the "Trust Under Will Of Marilyn Kaplan" and deposited into the trust account opened by Donald and Daniel at Valley National. [*4]The check did not contain any words like "payee's indorsement required." The trust was a customer of Valley National since it had an account there (see, UCC 4-104 [e]), and Valley National supplied the missing indorsement by stamping the back of the check "CREDITED TO THE ACCOUNT [OF] THE WITHIN NAMED PAYEE - Absence of Endorsement Guaranteed" pursuant to UCC 4-205 (1). When, as here, a check is drawn to a named payee, but not indorsed thereby, its deposit into the account of the named payee does not violate reasonable commercial standards (cf. Millens v Kingston Trust Co., 118 Misc 2d 512, 517; see also, Mouradian v Astoria Fed. Sav. & Loan, 91 NY2d 124, 129 [recovery will be denied when the proceeds of an improperly paid check actually reach the person intended to receive them]). 
In view of the foregoing, the court finds that Valley National is not liable under UCC 3-419 for either conversion or money had and received (Moore v Richmond Hill Sav. Bank, supra at 32, 36). Accordingly, the first and third causes of action are dismissed. The fourth and fifth causes of action for common-law conversion and aiding and abetting conversion are also dismissed insofar as they are asserted against Valley National.
Negligence against Valley National
The second cause of action for negligence is duplicative of the first cause of action for conversion under UCC 3-419. It alleges that Valley National failed to exercise due care when it accepted the $623,506.39 check for deposit without an indorsement. As previously discussed, the plaintiff does not have standing to maintain this action against Valley National under UCC 3-419. Moreover, except for the three aforementioned situations, which are inapplicable to the facts of this case, UCC 3-419 (3) absolves depositary or collecting banks from liability "in conversion or otherwise" (see, Moore v Richmond Hill Sav. Bank, supra at 36). Accordingly, Valley National cannot be held liable to the plaintiff in negligence based on the same factual allegations as the first cause of action for conversion under UCC 3-419.
In opposition to Valley National's motion to dismiss, the plaintiff appears to argue that Valley National was negligent when it opened the trust account by relying on the representations of Donald and Daniel that they were the only beneficiaries and trustees of Marilyn's trust. While the plaintiff contends that he is not asserting a claim against Valley National for negligence based on the opening of the trust account, he devotes a great deal of space in his brief to the argument that he was not named as a beneficiary on the Valley National account because Valley National did not verify Donald and Daniel's statements in the Trust Account Certification signed by them. The plaintiff argues that Valley National should have required production of the Letters of Trusteeship issued by the Surrogate's Court or a copy of Marilyn's will, both of which showed that he was a trustee and beneficiary of the trust. On page 7 of his brief in opposition to Valley National's motion, the plaintiff states, "VBN's reliance on the Trust Account Certification to which Donald and Daniel falsely swore that they were the only trustees/beneficiaries was done so at its peril, and such negligence is no shield from its liability...." Accordingly, the court will consider whether the plaintiff has a claim of negligence against Valley National related to the opening of the trust account.
Preliminarily, the court notes that the plaintiff acknowledges that Donald and Daniel, as two of the three trustees, had the authority to open the Valley National account into which the $623,506.39 check was deposited (see, EPTL 10-10.7).
Generally, a depositary bank has no duty to monitor fiduciary accounts maintained at its branches. Without actual knowledge or notice that a diversion is to occur or is ongoing, the bank may assume that a person acting as a fiduciary will apply the entrusted funds to the proper purposes and will adhere to the conditions of the appointment (Diller v Schick, US Dist Ct, SDNY, Sept. 16, 1998, Schwartz, J. [1998 WL 635539], at *2; see also, Lerner v Fleet Bank, N.A., 459 F3d 273, 287 [2nd Cir]; 2006 Frank Calandra, Jr. Irrovocable Trust v Signature Bank Corp., 816 F Supp 2d 222, 239 [SDNY], affd 503 Fed Appx 51 [2nd Cir]; 13 West's Legal Forms, Commercial Transactions § 44:92, n 3). Thus, it is not the bank's responsibility, but the responsibility of the trust and trustees, to ensure that the signing authority on the trust account is consistent with the trust agreement (Calandra, 816 F Supp 2d at n 25). Unless a bank undertakes to manage a trust, it is not required to ensure that its employees understand the purpose of the trust, the responsibilities of the trustees, the safeguarding of trust assets, or the contents of the underlying trust agreement (Calandra, 503 Fed Appx at 53). To hold otherwise would impose on every banking institution the duty to have a dedicated trust department in order to do any business with trusts (Id.). When, as here, the bank was only asked to open a typical bank account for the trust, the courts will not create a duty of care that, in effect, makes banks trustees of every trust with which they do business (Id. at 53-54). Accordingly, the second cause of action is dismissed. 
The Claims against the Bodian Defendants
The plaintiff's claims against the Bodian defendants are based on their purported plan to siphon equity away from the House Trust to Donald for his personal use, culminating in the undisclosed sale of the Altessa property and diversion of the proceeds of the sale. The plaintiff alleges causes of action against the Bodian defendants sounding in conversion, aiding and abetting conversion, tortious interference with Marilyn's will and trust, negligence, malpractice, and violation of Judiciary Law § 487.
To establish a cause of action for legal malpractice, the plaintiff must demonstrate the existence of an attorney-client relationship (see, Gleason v Chase, Sup Ct, Westchester County, Sept. 15, 2009, Scheinkman, J. [2009 WL 6849874] [and cases cited therein]). When the relationship of the parties fails to reveal actual privity or a relationship that closely resembles privity, no cause of action for malpractice exists (Id.). Privity does not depend on an express agreement or payment of a fee (Id.). Instead, courts look to the actions of the parties to ascertain the existence of such a relationship to see if there was an explicit undertaking to perform a specific task (Id.). In addition, the plaintiff must allege that the attorney was aware that his services were being used for a specific purpose, that the plaintiff relied upon those services, and that the attorney engaged in some conduct evincing an understanding of the plaintiff's reliance (Id.). 
Clearly the plaintiff, who was not even aware of the sale of the Altessa property, cannot demonstrate the existence of a relationship of actual privity, or even one that closely resembles privity, with the Bodian defendants. Instead, he argues that he had an attorney-client relationship with the Bodian defendants because he was a trustee of Marilyn's trust. 
Marilyn's will gave the trustees the power "to sell any stock, bond, security, or other real or personal property." When, as here, there are three or more trustees and nothing to the contrary in the will, a majority is needed to exercise a power (see, EPTL 10-10.7). Since Donald and Daniel were a majority of the three trustees, they properly exercised the power to sell the trust's two-thirds share of the Altessa property, which was owned by the trust and the Britvan estate. The Bodian defendants represented the sellers in connection with the sale. Thus, any cause of action for malpractice arising out of the sale must be maintained by the trust and/or the Britvan estate. The plaintiff cannot commence an action on the trust's behalf without the consent of the other surviving trustee. As previously discussed, when there are two surviving fiduciaries and nothing to the contrary in the will, the two fiduciaries must act together (see, EPTL 10-10.7). Since the plaintiff may not act alone on the trust's behalf, he does not have standing to maintain an action against the Bodian defendants in connection with the sale.
The plaintiff argues that, at the very least, he had an attorney-client relationship with the Bodian defendants as a third-party remainder beneficiary of the trust. 
Absent a showing of fraud or collusion or of a malicious or tortious act, an attorney is not liable to third parties for purported injuries caused by services performed on behalf of a client or advice offered to that client (Four Finger Art Factory, Inc. v Dinicola, US Dist Ct, SDNY, Jan. 9, 2001, Koeltl, J. [2001 WL 21248] at *7 [and cases cited therein]). Liberally construing the complaint, accepting the alleged facts as true, and giving the plaintiff the benefit of every possible favorable inference (Leon v Martinez, 84 NY2d 83, 87-88), the court finds that the plaintiff's allegations do not support an inference that the Bodian defendants acted in bad faith, committed fraud, or acted in an otherwise tortious or malicious way. The plaintiff's allegations that the Bodian defendants colluded with Donald and Daniel to divert the proceeds of the sale of the Altessa property are conclusory and unsupported by the evidence. The record does not support an inference that the Bodian defendants acted other than in their capacity as attorneys for the trust and the Britvan estate. As previously discussed, Donald and Daniel, as two of the three trustees, had the power act on behalf of the trust and to sell its two-thirds share of the Altessa property. Moreover, the documentary evidence reflects that the proceeds of the sale were used to pay the expenses of the sale, the mortgage on the property, and the Britvan estate. The remaining funds were deposited into the Valley National trust account. There is no evidence in the record to suggest that the Bodian defendants retained any of the proceeds of the sale. When, as here, an attorney acts within the scope of an agency relationship and is not motivated by personal gain, the attorney is not liable to third parties (Four Finger Art Factory, supra, citing Kartiganer Assoc. v Town of New Windsor, 108 AD2d 898; see also Pancake v Franzoni, 149 AD2d 575). Accordingly, the eighth cause of action for malpractice is dismissed. 
In view of the foregoing, the plaintiff's remaining claims against the Bodian defendants, which arise from the same facts and allege the same damages, are also dismissed. Accordingly, the ninth cause of action is dismissed, and the fourth through seventh causes of action are dismissed insofar as they are asserted against the Bodian defendants.
The Claims against Fidelity
Similar to the claims against the Bodian defendants, the plaintiff's claims against Fidelity are based on the undisclosed sale of the Altessa property and purported diversion of the proceeds of the sale away from the House Trust to Donald for his personal use. The plaintiff alleges causes of action against Fidelity sounding in conversion, aiding and abetting conversion, tortious interference with Marilyn's will and trust, and negligence.
Contrary to the plaintiff's contentions, Fidelity did not owe a duty to the plaintiff in connection with the sale. Absent evidence of fraud, collusion, or other special circumstances, a title company hired by one party is generally not subject to suit for negligent performance by one other than the party who contracted for its services (Lebhar v National City Bank, 25 Misc 3d 58, 60 [App Term, 2nd Dept] [and cases cited therein]). Fidelity was hired by the buyers of the Altessa property. Like the allegations against the Bodian defendants, the plaintiff's allegations that Fidelity colluded with Donald and Daniel to divert the proceeds of the sale of the Altessa property are conclusory and unsupported by the evidence. Moreover, there is no evidence in the record that Fidelity or any of the other defendants retained any of the proceeds of the sale. Accordingly, the fourth through seventh causes of action are dismissed insofar as they are asserted against Fidelity.
Damages
The plaintiff contends that, under article fifth of Marilyn's will and EPTL 10-10.1, Donald was disqualified from authorizing distributions of either principal or income from the trust for his own benefit. Moreover, under EPTL 10-10.7, a majority of the trustees was required in order to act. The plaintiff, therefore, contends that his authorization was needed to pay off the mortgage, which he contends had been incurred for Donald's benefit. Thus, the plaintiff seeks to recover the $174,310.28 that was used to satisfy the mortgage. 
Marilyn's will gave the trustees the power to borrow in the name of the estate or of any trust created thereunder "such sums for such periods and upon such terms as they shall deem necessary or convenient in the administration of [the] estate or of such trust, and to secure any such loan by mortgage or pledge....[E]ach such loan shall be payable only out of the assets of [the] estate or of such trust." On September 24, 2003, Elaine Britvan, the plaintiff, Donald, and Daniel, executed a credit-line mortgage in the amount of $200,000 that was recorded against the Altessa property. In December 2013, when the Altessa property was sold, the $174,310.28 that [*5]was due and owing on that mortgage was paid out of the proceeds of the sale in order to deliver clear title to the buyers. 
Although the plaintiff would not consent to taking out a reverse mortgage on the Altessa property in 2008, the documentary evidence clearly establishes that he executed the credit-line mortgage on the property in 2003 along with the other two trustees. Thus, contrary to the plaintiff's contentions, the mortgage and its subsequent satisfaction out of the proceeds of the sale of the Altessa property were properly authorized by the unanimous consent of all three trustees. Insofar as the plaintiff contends that the mortgage should not have been paid entirely out of the trust's proceeds of the sale of the Altessa property, the plaintiff's remedy, if any, is against the Britvan estate.
The plaintiff seeks to recover from the Bodian defendants $46,988 that was paid from their escrow account and deposited into the Valley National trust account as part of the purchase price of the Altessa property. As previously discussed, there is nothing in the record to suggest that the Bodian defendants retained any of the proceeds of the sale. Moreover, all of the funds remaining in the Valley National account were distributed to Bruce and Daniel pursuant to the terms of Marilyn's will. 
The plaintiff seeks to recover $83,500 that was withdrawn from the Valley National trust account and deposited into Donald's personal account, also at Valley National. The plaintiff contends that, since Donald was disqualified from authorizing distributions of either principal or income from the trust for his own benefit, the $83,500 withdrawal triggered Valley National's duty of inquiry. The plaintiff also contends that Valley National's duty of inquiry was triggered by a check dated April 9, 2012, in the amount of $36.89 that was drawn on the account previously maintained by the trust at Morgan Stanley-Smith Barney and deposited into Donald's personal account.
As previously discussed, a depositary bank generally has no duty to monitor fiduciary accounts maintained at its branches or to safeguard the funds in those accounts (Calandra, 503 Fed Appx at 53; see also, Norwest Mtge. v Dime Sav. Bank of NY, 280 AD2d 653, 654). Liability may be imposed if a depositary bank has actual knowledge or notice that a diversion will occur or is ongoing (Id.). Facts sufficient to cause a reasonably prudent person to suspect that trust funds are being misappropriated will trigger a duty of inquiry on the part of the depositary bank, and the bank's failure to conduct a reasonably inquiry when the obligation arises will result in the bank being charged with such knowledge as an inquiry would have disclosed (Id.). Such facts include a chronic insufficiency of funds or payment of the fiduciary's personal obligations to the depositary bank from the trust account (Id.). Small overdrafts are generally insufficient to trigger a duty of inquiry (Id.).
The plaintiff fails to allege any knowledge on Valley National's part, any insufficiency of funds in the trust account, or any transfers to satisfy Donald's personal indebtedness to the bank prior to the $83,500 withdrawal (Id.). Moreover, the $36.89 check was drawn on the account [*6]previously maintained by the trust at Morgan Stanley-Smith Barney, not the Valley National account; the amount of the check was small, and Valley National had no duty to ensure that it was deposited into another trust account (see, Diamore Realty Corp. v Stern, 50 AD3d 621, 623). The court finds that, under these circumstances, Valley National's duty to inquire was not triggered. The plaintiff's remedy, if any, is against Donald's estate and Daniel, for any breach of fiduciary duty.
In view of the foregoing, the court finds that the plaintiff has failed to establish any damages for which the defendants may be held liable, including punitive damages.
Conclusion
The motions are granted, and the complaint is dismissed.
DATED: July 20, 2016

J. S.C.



Footnotes

Footnote 1:The $670,494.39 consisted of a check from the buyers in the amount of $623,506.39 and a check from the defendant Martin Bodian's escrow account in the amount of $46,988. Both checks were payable to "Trust Under Will Of Marilyn Kaplan."

Footnote 2:Bruce explained at oral argument that the remaining balance in the Valley National account was not divided equally because he owed his brother money.

Footnote 3:The numbers in the complaint are slightly different from what the record reflects. The record reflects that the plaintiff received $219,000 and that the trust's share of the proceeds was $844,804.67. The $174,310.28 that was paid to the Bank of New York to satisfy the mortgage on the property was taken out of the trust's share, and the balance ($670,494.39) was deposited into the Valley National account.