287 N.J. Super. 1 (1996)
670 A.2d 99
EVELYN Z. SOMMERS, PLAINTIFF-APPELLANT,
v.
THOMAS A. MCKINNEY, DAVID WALDMAN, MICHAEL O. RENDA AND CITIZENS FIRST NATIONAL BANK OF NEW JERSEY, A BANKING CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1995.
Decided January 26, 1996.
*4 Before Judges DREIER, ARNOLD M. STEIN and CUFF.
Evelyn Z. Sommers, appellant, argued the cause pro se.
Angela A. Iuso argued the cause for respondents, Thomas A. McKinney, David Waldman and Michael O. Renda (Connell, Foley & Geiser, attorneys; Robert E. Ryan, of counsel, Ms. Iuso on the brief).
Andrew J. Karas argued the cause for respondent, Citizens First National Bank of New Jersey (Karas, Kilstein, Hirschklau, Feitlin & Youngman, attorneys; Mr. Karas on the brief).
The opinion of the court was delivered by CUFF, J.A.D.
In this action for legal malpractice and fraud, plaintiff Evelyn Sommers appeals from separate orders which granted summary *5 judgment in favor of all defendants. This appeal has its roots in prior litigation between plaintiff and her former municipal employer. Plaintiff Evelyn Sommers appeals from the dismissal of her complaint which asserted claims of legal malpractice and fraud against defendant Thomas A. McKinney, and his law partners, David Waldman and Michael O. Renda, and negligence and fraud against defendant Citizens First National Bank of New Jersey. Because defendant bank concedes that it improperly negotiated the settlement check without all necessary endorsements, and because plaintiff demonstrated that there are genuine issues of material fact concerning breach of the duties owed to her by her attorney, and in this case expert testimony is not required to establish the duty owed to her by her attorney, we reverse and remand for further proceedings consistent with this opinion.
In 1984, plaintiff was appointed tax assessor of the Borough of Dumont for a four-year term. When her term expired on June 30, 1988, she continued to work, despite disputes concerning her hours and rate of pay. However, when her pay was cut, she commenced a prerogative writ action to affirm her tenured status and to recover back pay.
She was represented by another law firm in that action until that firm recommended that she accept the Borough's "final" settlement offer. Pursuant to the terms of that offer, the Borough was prepared to acknowledge her tenured status and pay $19,375 in back pay. Plaintiff sought a second opinion from defendant McKinney, and on the strength of McKinney's advice that she was entitled to tenure as a matter of law and additional back pay, she discharged her initial attorney and retained McKinney. Approximately six months later, the matter was settled during trial. Plaintiff received $40,000 but she surrendered her claim for tenure.
When plaintiff retained McKinney, she paid a $3,500 retainer. Plaintiff claims that the money was to be held in trust, and McKinney could draw against this fund only after plaintiff received and approved a monthly itemized bill. It is undisputed that *6 no bills were submitted. However, four days after the settlement was placed on the record she was presented with a bill for services. The total bill for services was $14,164 less the $3,500 retainer plus $2,544.30 for legal services due her former lawyer. The outstanding balance was $10,664.
Plaintiff asserts that she visited McKinney on February 14, 1991, to review the file and contest the bill. On February 15, 1991, plaintiff presented McKinney with a letter in which she informed him that the bill was in dispute and directed him to contact her when the settlement funds were received.
Despite this notice, McKinney did not notify plaintiff when he received the settlement check on February 21, 1991. The check, made payable to "E. Sommers and T.A. McKinney Attorney Trust Account" was deposited by McKinney with his sole endorsement. Defendant bank accepted the check, although it lacked plaintiff's endorsement.
McKinney withdrew his fee and sent a check to plaintiff for $26,791.70. Plaintiff objected to McKinney concerning his action and protested to defendant bank. On March 15, 1991, McKinney sent a letter to plaintiff in which he offered to place the disputed fee in a trust account if plaintiff returned the funds disbursed to her. Plaintiff not only objected to McKinney concerning his suggested solution but also filed a complaint with the Fee Arbitration Committee. Recognizing that this committee could not address the ethical issue raised by McKinney's action, she withdrew the fee complaint and filed a complaint with the District Ethics Committee. McKinney was eventually publicly reprimanded for his conduct. See Matter of McKinney, 139 N.J. 388, 655 A.2d 71 (1995). The Supreme Court also referred the fee dispute to arbitration.
Meanwhile, plaintiff commenced this action pro se against McKinney, his law partners, and the bank. The gravamen of her complaint against McKinney lies in his handling of her case against the Borough of Dumont and McKinney's subsequent mishandling of the settlement proceeds. Her complaint against *7 McKinney's law partners is founded on their relationship to him and their failure to intercede and rectify the situation. Her complaint against the bank centers on their acceptance of the check despite the absence of the requisite endorsements, contrary to the law governing instruments payable to two or more persons. See N.J.S.A. 12A:3-116(b).
On March 4, 1994, plaintiff's complaint for legal malpractice against McKinney and his law partners was dismissed on their motion for summary judgment predicated on plaintiff's failure to file an expert report. In an opinion dated September 15, 1994, another judge dismissed the remaining counts which asserted intentional, unethical, criminal and fraudulent conduct against McKinney and his partners for which plaintiff sought punitive damages. Having previously refused to disturb a summary judgment order which had dismissed the legal malpractice claims, the motion judge characterized the remaining claims against McKinney and his partners as "a fee dispute and nothing more." The motion judge also granted summary judgment in favor of the bank finding that plaintiff had failed to show that the bank did anything "willfully, wantonly or intentionally ... to harm the plaintiff."
The legal malpractice claim against McKinney flows from his representation of her in the Sommers v. Dumont litigation. She alleges that 1) the case was inadequately prepared, 2) McKinney failed to communicate more favorable settlement offers to her, and 3) McKinney misrepresented discussions in chambers regarding the extent of Dumont's proofs on the tenure issue. Plaintiff asserts that these acts by McKinney not only violated his obligations to her but also induced her to accept a less advantageous settlement. This claim was dismissed for want of an expert report. To evaluate the dismissal of this claim properly, we must examine the pleadings and discovery at the time this order was entered.
It is undisputed that when plaintiff was represented by her initial attorney a settlement was proposed, after which plaintiff consulted McKinney. In answers to interrogatories, McKinney *8 stated, "[a]t that time, based upon the facts that the plaintiff had given me and as they appeared in the documents, I indicated that the plaintiff had a valid claim for tenure." At issue was the unit of damages to which Sommers was entitled. It was on this basis that plaintiff retained McKinney and a substitution of attorney was filed.
Eventually, the matter was called for trial. The trial judge conferenced the matter in chambers with McKinney and the Borough attorney. Plaintiff and McKinney related that the judge opined that without legal proof of plaintiff's right to tenure, the tenure claim was probably without merit. McKinney advised plaintiff that the Borough was prepared to present witnesses who would testify that plaintiff had been instructed not to work the hours that she had worked and for which she was seeking compensation. McKinney advised her that this testimony could undercut her back pay claim. McKinney had taken no discovery to support her back pay claim. Based on his advice, plaintiff settled her claim against the Borough for $40,000 without recognition of tenure. This amount included the time she had worked between the time of the initial settlement offer, which included a recognition of her tenure, and the eventual settlement.
In this action, plaintiff asserts that she was compelled to accept this settlement due to McKinney's lack of preparation and misrepresentation to her of the state of the Borough's case. Specifically, she claims that the trial judge was not persuaded concerning her tenure status because McKinney had failed to cite any legal authority in support of her tenure claim. In support of this claim, plaintiff prepared an inventory of the Sommers v. Dumont file maintained by McKinney which does not even contain a trial brief.
Furthermore, she asserts that a letter from the Borough attorney to the Borough, apparently received during discovery, refutes McKinney's representations concerning the strength of the Borough's proofs on the back pay issue. In this letter dated the day after the conference with the trial judge, the Borough attorney stated:

*9 [I] have been unable to find any proof that Ms. Sommers was directed to reduce her work hours after the monies for the reassessment program were withdrawn in November of 1988. Similarly, I have been unable to find any evidence that Evelyn Sommers did not work a minimum of 32 1/2 hours entitling her to additional monies.
* * * * * * * *
Recognizing that there is no evidence Ms. Sommers was directed to reduce her hours, I believe that there is a strong probability that plaintiff will recover money damages.
We recognize that the obvious difference concerning the proofs able to be presented by the Borough does not establish that the Borough acknowledged the weakness of its back pay case in McKinney's presence. But the Borough's position was not explored in discovery. An issue of fact certainly existed regarding the information known to McKinney and transmitted to plaintiff.
Having identified several issues of fact, it is now necessary to determine if these disputed facts are material, i.e. whether a resolution of those factual disputes in plaintiff's favor would entitle her to judgment as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529, 666 A.2d 146 (1995). The motion judge granted summary judgment in favor of McKinney and his partners because Sommers had failed to produce an expert to establish the standard of care owed by McKinney to Sommers and any breach of that standard of care.
An attorney is obligated to exercise that degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise. St. Pius X House of Retreats v. Diocese of Camden, 88 N.J. 571, 588, 443 A.2d 1052 (1982). Necessary steps to the proper handling of a case include careful investigation of the facts of the matter, formulation of legal strategy, filing of the appropriate papers, and maintenance of communication with the client. Ziegelheim v. Apollo, 128 N.J. 250, 261, 607 A.2d 1298 (1992).
Legal malpractice is negligence relating to an attorney's representation of a client. In order to establish malpractice, the plaintiff must demonstrate: 1) the existence of an attorney-client *10 relationship creating a duty of care upon the attorney; 2) that the attorney breached the duty owed; 3) that the breach was the proximate cause of any damages sustained; and 4) that actual damages were incurred. Albright v. Burns, 206 N.J. Super. 625, 632, 503 A.2d 386 (App.Div. 1986). The client bears the burden of proving by a preponderance of competent credible evidence that injuries were suffered as a proximate consequence of the attorney's breach of duty. Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 342, 419 A.2d 417 (1980). This burden is not satisfied by mere conjecture, surmise or suspicion. 2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 488, 640 A.2d 346 (App.Div. 1994).
Expert testimony is required in cases of professional malpractice where the matter to be addressed is so esoteric that the average juror could not form a valid judgment as to whether the conduct of the professional was reasonable. Butler v. Acme Markets, Inc., 89 N.J. 270, 283, 445 A.2d 1141 (1982); see also Rosenberg v. Cahill, 99 N.J. 318, 325, 492 A.2d 371 (1985) (chiropractor); Buckelew v. Grossbard, 87 N.J. 512, 435 A.2d 1150 (1981) (physicians); Walker v. Rogge, Inc. v. Chelsea Title & Guar. Co., 222 N.J. Super. 363, 374-76, 536 A.2d 1309 (App.Div. 1988) (surveyors), aff'd in part, rev'd in part on other grounds, 116 N.J. 517, 562 A.2d 208 (1989). However, the facts of a given case may be such that a layperson's common knowledge is sufficient to permit a finding that the duty of care has been breached. Klimko v. Rose, 84 N.J. 496, 503-04, 422 A.2d 418 (1980).
In rare cases, expert testimony is not required in a legal malpractice action where the duty of care to a client is so basic that it may be determined by the court as a matter of law. Brizak v. Needle, 239 N.J. Super. 415, 429, 571 A.2d 975 (App.Div.) (failure to conduct investigation into personal injury claim resulting in untimely medical malpractice suit), certif. denied, 122 N.J. 164, 584 A.2d 230 (1990); see also Stewart v. Sbarro, 142 N.J. Super. 581, 591, 362 A.2d 581 (App.Div.) (failure to execute and record bond and mortgage), certif. denied, 72 N.J. 459, 371 A.2d 63 (1976); *11 Fuschetti v. Bierman, 128 N.J. Super. 290, 295, 319 A.2d 781 (Law Div. 1974) (failure to file suit before running of statute of limitations). Further, expert testimony may not be necessary to establish proximate cause in every legal malpractice case, particularly where the causal relationship between the attorney's legal malpractice and the client's loss is so obvious that the trier of fact can resolve the issue as a matter of common knowledge. 2175 Lemoine Ave. Corp., supra, 272 N.J. Super. at 490, 640 A.2d 346 (expert testimony necessary for trial of legal malpractice arising from complex commercial transaction). On the other hand, if the adequacy of an investigation or the soundness of an opinion is the issue, a jury will usually require the assistance of an expert opinion. Aldrich v. Hawrylo, 281 N.J. Super. 201, 214, 656 A.2d 1304 (App.Div. 1995).
Stripped to its essentials, plaintiff asserts that she accepted a settlement offer far inferior to one previously tendered because her attorney inadequately prepared the case, failed to submit a legal argument to support her tenure claim and misrepresented the state of the case to her.[1] These issues do not require a jury to speculate whether McKinney selected the appropriate authorities to advance plaintiff's legal position or to evaluate McKinney's judgment in recommending a settlement offer to her. Rather plaintiff asserts that no work was done to advance her case and that McKinney knew the shortcomings of the Borough's case but misrepresented the strength of its defense to her back pay claim to induce her to settle the case and collect his fee.
Having undertaken to represent her, McKinney owed a duty of absolute good faith and loyalty to Sommers. Matter of Stein, 97 N.J. 550, 563, 483 A.2d 109 (1984). He was obliged to prepare her *12 case for trial. Ziegelheim, supra, 128 N.J. at 261, 607 A.2d 1298. Once settlement discussions commenced, McKinney was obliged to communicate all offers to her. See, e.g., Yeomans v. All State Ins. Co., 121 N.J. Super. 96, 102, 296 A.2d 96 (Cty.Ct. 1972), aff'd, 130 N.J. Super. 48, 324 A.2d 906 (App.Div. 1974). He was also obliged to give her a full and accurate assessment of the case in support of and in defense of her claims. In re Loring, 73 N.J. 282, 290, 374 A.2d 466 (1977).
We conclude that Sommers was not required to have an expert opine that McKinney should have briefed an issue and that the failure to do so was a breach of that duty to plaintiff. Similarly, Sommers was not obliged to have an expert opine that McKinney was required to report the settlement discussion accurately and recommend a disposition of the case based upon an accurate rendition of each party's positions. Furthermore, Sommers was not required to produce an expert to opine that, if she had been told that the town had no defense to her back pay claim, she would have changed her settlement position. Therefore, we conclude that the motion for summary judgment in favor of McKinney and his firm should not have been granted.
Plaintiff also founds her legal malpractice claim against McKinney and his partners on the manner in which he disbursed the settlement proceeds and his attempted resolution of the fee dispute. Characterizing this aspect of plaintiff's claim as nothing more than a fee dispute, the motion judge granted defendant's motion for summary judgment.
In a sense, the motion judge correctly observed that this case involves a dispute regarding the amount of a legal fee. However, the fee dispute is also a constituent part of plaintiff's entire negligence claim against McKinney. Plaintiff's claim is actually in two parts: 1) McKinney did little, if any, work on her case, and 2) she was charged for work inadequately or never done.
By failing to notify plaintiff that he had received the settlement funds and by disbursing those funds when he knew the fee was disputed, McKinney was publicly reprimanded. Matter of McKinney, *13 supra, 139 N.J. at 388, 655 A.2d 71. Plaintiff argues that the finding that McKinney violated R.P.C. 1.15(b) and (c) establishes part of her claim of legal malpractice against McKinney and obviates the need for an expert report to support her negligence claim.
Violation of the rules of professional conduct do not per se give rise to a cause of action in tort. Petrillo v. Bachenberg, 263 N.J. Super. 472, 483, 623 A.2d 272 (App.Div. 1993), aff'd, 139 N.J. 472, 655 A.2d 1354 (1995); Albright, supra, 206 N.J. Super. at 634, 503 A.2d 386; but see Baxt v. Liloia, 281 N.J. Super. 50, 61, 656 A.2d 835 (App.Div.) (Dreier, P.J.A.D., concurring) (breach of ethical rules provides a legitimate basis for a civil action against an attorney), appeal after remand, 284 N.J. Super. 221, 664 A.2d 948 (App.Div. 1995). However, because the ethical standards set the minimum level of competency to be displayed for all attorneys, violation of the rules can be considered evidence of malpractice. Albright, supra, 206 N.J. Super. at 634, 503 A.2d 386; Lamb v. Barbour, 188 N.J. Super. 6, 12, 455 A.2d 1122 (App.Div. 1982), certif. denied, 93 N.J. 297, 460 A.2d 693 (1983). Moreover, even when plaintiff establishes that rules of conduct have been violated, she must also establish proximate cause. Albright, supra, 206 N.J. Super. at 635, 503 A.2d 386; Lovett v. Estate of Lovett, 250 N.J. Super. 79, 98, 593 A.2d 382 (Ch.Div. 1991).
Plaintiff's claim against McKinney goes beyond the manner in which he disbursed the settlement proceeds. She claims that due to his method of disbursing the proceeds she has been prevented from challenging the excessive nature of his fee. She asserts that she has been charged for work that was not done or inadequately performed. Further, she contends that this lack of or inadequate performance has caused her to receive lower than expected benefits from her negotiated settlement with her former employer.
To the extent that plaintiff challenges the quality of the work done on her behalf, the motion judge properly dismissed this claim because of her failure to submit an expert report. Brizak, supra, *14 239 N.J. Super. at 432, 571 A.2d 975. However, plaintiff is not required to produce an expert to announce that an attorney may not charge for work that has not been performed or to advise the jury that a trial brief does not exist. Furthermore, it is not necessary for an expert to establish the causal connection between a charge for services not performed and lesser proceeds to the plaintiff.
Finally, we address the dismissal of counts fifteen and sixteen of the complaint against defendant bank. Count fifteen alleges that the bank wrongfully allowed McKinney to deposit and draw on that deposit without plaintiff's endorsement and refused to take any measures to remedy the error. Count sixteen alleges that this conduct by the bank was intentional and malicious.
A negotiable instrument payable to joint payees not in the alternative may not be negotiated without the endorsement of both payees. N.J.S.A. 12A:3-116(b). Payment of a draft or check with a missing endorsement is equivalent to a forgery and constitutes conversion against the non-signing payee. Mandelbaum v. P & D Printing Corp., 279 N.J. Super. 427, 432, 652 A.2d 1266 (App.Div. 1995); Humberto Decorators, Inc. v. Plaza Nat'l Bank, 180 N.J. Super. 170, 174, 434 A.2d 618 (App.Div. 1981); Salsman v. National Community Bank of Rutherford, 102 N.J. Super. 482, 492, 246 A.2d 162 (Law Div. 1968), aff'd, 105 N.J. Super. 164, 251 A.2d 460 (App.Div. 1969).
The payee may assert a cause of action for conversion against a drawee or payor bank. See Mandelbaum, supra, 279 N.J. Super. at 432, 652 A.2d 1266; Gast v. American Casualty Co., 99 N.J. Super. 538, 542, 240 A.2d 682 (App.Div. 1968). The intended payee may also assert a claim against the depository bank for payment of an instrument with a missing or forged endorsement. Mandelbaum, supra, 279 N.J. Super. at 438-39, 652 A.2d 1266; see also Knesz v. Central Jersey Bank & Trust Co. of Freehold, 97 N.J. 1, 21-22, 477 A.2d 806 (1984). Defendant bank was both the drawee and the depository bank.
*15 Defendant bank concedes that it improperly deposited the settlement check and that it is liable to plaintiff. Therefore, the order granting summary judgment on count fifteen in favor of defendant bank is reversed. We affirm the dismissal of count sixteen. This count seeks punitive damages; however, plaintiff provided no facts to support a finding of intentional misconduct or malicious conduct by defendant bank.
The orders dismissing all claims against defendants McKinney and his law firm are reversed; the order dismissing count 15 of the complaint is reversed; the order dismissing count 16 is affirmed. The matter is remanded to the Law Division for further proceedings consistent with this opinion.
NOTES
[1] Counts 18 and 19 of plaintiff's proposed amended complaint asserted a legal malpractice claim specifically related to McKinney's alleged misrepresentation of the state of the Borough's proofs and its ability to defend her back pay claim. Although probably encompassed in plaintiff's prior pleadings, the motion to allow the filing of an amended complaint should have been granted to allow a full exposition of plaintiff's claims against McKinney.