**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4441-16T3

ROBERTA GREENING,

    Plaintiff-Appellant,

v.

BARRY E. LEVINE, ESQ.,

    Defendant-Respondent.

_____

Argued September 13, 2018 – Decided  October 16, 2018

Before Judges Fisher and Firko.

On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2196-15.

Joshua G. Curtis argued the cause for appellant (Law Offices of Michael J. Breslin, Jr., attorneys; Michael J. Breslin and Joshua G. Curtis, on the brief).

Mark M. Tallmadge argued the cause for respondent (Bressler, Amery & Ross, PC, attorneys; Mark M. Tallmadge and Risa D. Rich, on the brief).

PER CURIAM

In this legal malpractice matter, plaintiff appeals from an order granting summary judgment to defendant on the basis that there was no attorney-client relationship or duty owed. We reverse and remand.

I.

The facts derived from the summary judgment record, viewed "in the light most favorable to [plaintiff,] the non-moving party[,]" Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (citing Rule 4:46-2(c)), are summarized as follows. Plaintiff hired defendant to represent her in connection with her purchase of a condominium unit at Windemere Castle ("the Castle") in 1998. He represented her again in 1999 relative to a refinance, and in 2005 in connection with the purchase of another unit in the building.

In November 2005, a fire destroyed nearly all of the Castle, and the eight unit owners agreed to rebuild. Plaintiff referred the Condominium Association ("WCCA") to defendant, who accepted the engagement without a written retainer agreement.[1] After soliciting bids, CMR Construction Company ("CMR") was selected to rebuild for the sum of $1,369,956.42. A draft contract

---

[1] In his first set of answers to interrogatories, defendant certified that he was advising both WCCA and the "individual" unit owners. Nearly a year later he amended his answers and certified to the contrary.

was prepared by CMR, forwarded to defendant, and signed by plaintiff, ostensibly on behalf of WCCA.[2] The construction was to be completed within nine months. Eighteen months later, the work was not completed. CMR submitted a "change order" on November 12, 2007, informing WCCA that "governmental changes" called for an additional $413,550 payment.

Another "surprise" bill was sent by CMR to the Association in April 2009, seeking an additional $286,633, thereby increasing the cost of the project to $1,951,867.42. Thus, CMR completed the project two years late, with a cost overrun of $700,133, which was assessed against the owners. In her answers to interrogatories, plaintiff certified that she was in "complete shock" after reviewing CMR's bills; that WCCA "could not possibly pay the amount owed;" and that "the builder was threatening to lien the building." Due to her "desperate financial position," plaintiff sought guidance from defendant after being pressured by fellow unit owners to pay her share and thereby allow them to sell their units free of any lien or encumbrance. Defendant, who had thirty-six years of experience practicing in the field of bankruptcy law, advised her to file for

_____

[2] There are references in the record to the contract date as May 3, 2006, and June 1, 2006. This distinction is not germane to our determination of this matter.

A-4441-16T3

bankruptcy. In doing so, plaintiff asserts that he assumed the obligation of an attorney.

Plaintiff claims that she asked defendant to challenge CMR's bill, while the other unit owners felt CMR would expeditiously obtain a judgment or lien against WCCA and their individual units. In the face of this financial dilemma, the other unit owners considered suing WCCA's insurance broker for negligently underinsuring the property and the unit owner responsible for the fire. As part of their anticipated litigation strategy against the broker, they considered engaging a CMR principal, Carl Rodriguez ("Carl"), as their chief witness. Thus, the other owners were united in interest by deciding to pay CMR's invoices and pursue the litigation. Plaintiff was outvoted. Defendant wrote a letter to CMR confirming the settlement terms, which CMR accepted. Defendant's letter outlined the monetary portion assessed to each unit owner. CMR sent plaintiff two promissory notes, which she readily signed, in the amounts of $106,384 and $53,721, and returned them to defendant.

After preparing an agreement between the unit owners, including plaintiff, defendant sent an email to them expressing his concern that CMR "may have violated the New Jersey Consumer Fraud Act," and he questioned whether the settlement should be finalized. Plaintiff responded in writing that, "a contractor

A-4441-16T3

has an obligation to inform his client in advance when expenses are running significantly higher than originally quoted . . . and if there is some legal recourse we have to hold Carl accountable for some things . . . I think [WCCA] has an obligation to at least look into it." For the reasons previously set forth, plaintiff was again outvoted. Defendant never advised her to retain independent counsel.

In September 2009, defendant prepared another agreement between the unit owners that included plaintiff, and CMR solidifying the settlement terms. One of the provisions in the revised agreement provided that legal action could be initiated against a unit owner individually in the event of a default.

After defaulting on payments, plaintiff was sued by CMR, and the matter was tried before a jury.[3] The trial judge dismissed plaintiff's counterclaim asserting Consumer Fraud Act claims against CMR on the basis of equitable estoppel since she did not challenge CMR's invoices or stop the reconstruction, and because she signed promissory notes that were reviewed in advance by defendant. Judgment was entered against plaintiff in the amount of $289,483.24.[4] She now seeks to recoup this sum from defendant.

---

[3] The litigation was encaptioned, "CMR Construction Co. v. Roberta Greening et al", MRS-L-3094-11.

[4] Plaintiff dismissed her third-party complaint against defendant and re-filed a complaint against him under docket number MRS-L-2196-15.

In this action, the discovery provided to plaintiff indicated that defendant "represented WCCA and the individual unit owners, including Ms. Greening . . . and with regard to a dispute that arose with the plaintiff, CMR." In his answers to interrogatories, defendant certified that he "negotiated the Agreement with CMR," and that he took "into account the interests of WCCA and all of the individual unit owners affected, including Ms. Greening."

Defendant moved for summary judgment on the grounds that: (1) he was not acting as plaintiff's attorney with regard to the dispute with CMR; (2) even assuming defendant was acting as her attorney, his conduct did not fall below the applicable standard of care; and (3) regardless of the above arguments, his conduct was not a proximate cause of any damages she sustained.

Defendant asserts that the judge correctly determined that he cannot be found negligent because he had no duty or obligation to provide personal advice to plaintiff. Even if an attorney-client relationship was established, defendant argues that any departure from accepted legal practice was not a proximate cause of plaintiff's alleged damages because she was responsible to pay her allocated share of CMR's bill in any event, less any credits.[5]

---

[5] The Association recovered $400,000 on the underinsured coverage claim and from the unit owner who started the fire. Plaintiff received approximately $81,000 of this amount.

A-4441-16T3

An inference can be drawn from the conduct between the parties that an attorney-client relationship formed according to plaintiff. She argues that her reliance upon defendant, and his purported acknowledgment of it, supports that conclusion. Even if she is deemed a "non-client," a duty was nonetheless still owed to her by him.

The motion judge found that, "the undisputed facts show there was no lawyer-client relationship between [p]laintiff and [d]efendant in regard to [d]efendant's representation of WCCA. The undisputed facts here also show [d]efendant did not owe at duty to [p]laintiff as a non-client." The motion was granted and the complaint was dismissed. This appeal followed.

## II.

In her appeal, plaintiff argues that the motion judge erred by granting summary judgment in favor of defendant. We review a grant of summary judgment de novo, observing the same standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Summary judgment should be granted only if the record demonstrates there is "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving

party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). If no genuine issue of material fact exists, the inquiry then turns to "whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citations omitted).

"[T]he usual principles of negligence apply to legal malpractice." Conklin v. Hannoch Weisman, 145 N.J. 395, 416 (1996). "The requisite elements of a cause of action for legal malpractice are: (1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of that duty; and (3) proximate causation." Ibid. (citation and internal quotation marks omitted); accord Jerista v. Murray, 185 N.J. 175, 190-91 (2005); Froom v. Perel, 377 N.J. Super. 298, 310 (App. Div. 2005) ("The existence of an attorney-client relationship is, of course, essential to the assertion of a cause of action for legal malpractice."). Plaintiff must establish each element of a legal malpractice claim. Sommers v. McKinney, 287 N.J. Super. 1, 10 (App. Div. 1996).

When there is conflicting evidence about those elements essential to an attorney-client relationship, the existence of the relationship is an issue of fact. See Froom, 377 N.J. Super. at 311-12 (holding existence of attorney-client

relationship could not be determined as a matter of law due to conflicting evidence).

A relationship of client and lawyer arises when:

> (1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and either
>
> (a) the lawyer manifests to the person consent to do so; or
>
> (b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyers to provide the services[.]
>
> [Herbert v. Haytaian, 292 N.J. Super. 426, 437-38 (App. Div. 1996) (quoting Restatement of the Law Governing Lawyers (Proposed Final Draft No. 1) § 26 (1996)).]

"'[R]epresentation is inherently an aware, consensual relationship' . . . founded upon the lawyer affirmatively accepting a professional responsibility." In re Palmieri, 76 N.J. 51, 58 (1978) (citation omitted). Parties typically establish the relationship by express agreement. The relationship can also be implied by the parties' conduct. See id. at 58-59 (recognizing that attorney's "acceptance need not necessarily be articulated, in writing or speech but may, under certain circumstances, be inferred from the conduct of the parties"); see also Herbert, 292 N.J. Super. at 436. "Whether a financial retainer is paid is not conclusive of the existence of an attorney-client relationship." State v. Morelli, 152 N.J. Super. 67, 74 (App. Div. 1977).

Applying these guiding principles here, we conclude that, contrary to the judge's determination, plaintiff established a prima facie claim for legal malpractice because genuinely disputed material facts exist. Whether or not defendant had a written retainer agreement with WCCA or plaintiff is irrelevant as the evidence shows that he was acting on behalf of each individual unit owner. There is conflicting evidence as to whether defendant owed a duty to plaintiff creating an issue of fact under Froom. Thus, the judge's determination that the parties were not in an attorney-client relationship is erroneous because, at the very least, there was an implied relationship.

To the extent we have not addressed plaintiff's remaining arguments, we find them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Accordingly, the order granting summary judgment is reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4441-16T3