NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A- 2653-20

MORRIS PROPERTIES, INC.
and KRISTEN A. MORRIS,

      Plaintiffs-Appellants,

v.

JONATHAN WHEELER,
MARIO BARNABEI, and
LAW OFFICES OF
JONATHAN WHEELER,
P.C.,

      Defendants-Respondents.

_____

APPROVED FOR PUBLICATION

August 22, 2023

APPELLATE DIVISION

Argued November 1, 2022 – Decided February 28, 2023

Before Judges Gilson, Rose and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0238-19.

Chad M. Sherwood argued the cause for appellants (Law Office of Chad M. Sherwood, LLC, attorneys; Chad M. Sherwood, on the brief).

John L. Slimm argued the cause for respondents (Marshall Dennehey, attorneys; John L. Slimm and Jeremy J. Zacharias, on the brief).

The opinion of the court was delivered by

GUMMER, J.A.D.

In this legal-malpractice case, plaintiffs Morris Properties, Inc. (MPI) and Kristen A. Morris appeal from an order granting summary judgment to defendants Jonathan Wheeler, Mario Barnabei, and the Law Offices of Jonathan Wheeler, P.C. (the firm). Because plaintiffs failed to establish defendants owed a duty to Morris or that defendants' alleged negligence had proximately caused plaintiffs' asserted damages, we affirm.

I.

We discern the material facts from the summary-judgment record, viewing them in the light most favorable to plaintiffs, the non-moving parties. See Richter v. Oakland Bd. of Educ., 246 N.J. 507, 515 (2021). MPI owns a commercial building located in Somers Point. According to plaintiffs, the building sustained damages from Hurricane Sandy in October 2012. At that time, the building was insured under a policy issued to MPI by West American Insurance Company (West American).

About one month after the hurricane, MPI retained Metro Public Adjustment (Metro), a public adjusting firm, to assist it in pursuing an insurance claim. Metro submitted an insurance claim to West American for wind damage and the ensuing water damage MPI's building allegedly sustained from

Hurricane Sandy. In an October 15, 2013 letter, MPI's president Morris was advised that West American's inspector had concluded wind damage from the hurricane was limited to one area of the roof and that West American had denied coverage because the cost of repairing the damage related to that one area of the roof was less than MPI's $51,590.76 deductible.

On April 1, 2014, MPI entered an agreement retaining the firm to represent MPI in its efforts to obtain damages from West American. About two weeks later, the firm filed a complaint executed by Wheeler on behalf of MPI in the Law Division, naming West American as the defendant. MPI alleged West American had acted in bad faith and had breached its contractual obligations by refusing to pay benefits owed to MPI under the policy. West American removed the case to the United States District Court for the District of New Jersey. The district court issued a scheduling order and an amended order requiring MPI to serve its expert reports and disclosures by a certain date. During an initial court conference, West American's counsel informed defendant Barnabei, an attorney with the firm, that a pre-litigation offer of $34,000 to resolve the claim, which MPI had rejected, might "still be on the table" but asked whether MPI was also pursuing the deductible. Barnabei reported that conversation to Wheeler and understood Wheeler, in turn, would communicate the offer to MPI.

In July 2015, a lawyer associated with the firm served MPI's answers to West American's first set of interrogatories. In those answers, MPI identified Robert Schmidt and Jay Furhmann of Metro as fact and expert witnesses and asserted that although work had been done on the roof in the past, MPI had "never had a roof problem prior to this loss" and had "never had a claim or damage to the roof prior to this loss." Morris signed a verification, stating MPI's answers were accurate "to the best of [her] knowledge, information and belief."

On October 8, 2015, Morris was deposed as a corporate designee for MPI. See R. 4:14-2(c). Barnabei met with Morris the morning of her deposition. Barnabei, on behalf of the firm, represented MPI at the deposition. During the deposition, Morris denied the building's roof had any history of leaks before it was damaged by Hurricane Sandy and denied anyone or any tenant had complained about roof leaks. However, West American's counsel showed Morris letters sent to MPI by tenants complaining about roof leaks before Hurricane Sandy. Morris testified she had not previously seen those letters.

On January 27, 2016, Wheeler's legal assistant sent an email to Morris, advising her she would be deposed again on February 11, 2016. When Morris asked why she was being deposed again, the legal assistant responded:

> You stated at your deposition that you never had complaints of any of your tenants having water damage before Hurricane Sandy, but your largest tenant . . .

> testified under oath that there had been a series of leaks for years . . . . The Judge has intervened and ruled that you and [the tenant] be re-deposed because you lied under oath.

West American did not depose Morris again. On June 6, 2016, the district court granted West American's motion for leave to amend its answer to assert a counterclaim for insurance fraud. Within a month, Wheeler and the firm moved to withdraw as counsel for MPI. The district court ultimately allowed Wheeler and the firm to withdraw. Represented by new counsel, MPI entered a settlement agreement with West American in which MPI and West American released their claims against each other and West American paid MPI $10,000.

On February 4, 2019, plaintiffs filed a complaint against defendants, pleading two counts of legal malpractice against defendants, one on behalf of MPI and the other on behalf of Morris individually. Regarding MPI, plaintiffs faulted defendants for not naming an expert, submitting an expert report, or preparing Morris for her deposition in the coverage action. Plaintiffs asserted that due to defendants' negligence, MPI was forced to settle its claims against West American "for a small fraction of their full value." Regarding Morris individually, plaintiffs alleged defendants had known that West American accused her of committing insurance fraud in a report to New Jersey's Department of Banking and Insurance. Plaintiffs faulted defendants for failing

5

to advise them of that report and claimed that during the State's subsequent investigation, Morris had "lived under the threat of significant fines and criminal incarceration." Plaintiffs asserted the investigation, which did not result in any charges, would have been avoided had defendants properly prepared Morris for her deposition. Alleging defendants had acted willfully, wantonly, and in reckless disregard of duties they purportedly owed to both MPI and Morris, plaintiffs sought compensatory and punitive damages on behalf of MPI and punitive damages on behalf of Morris.

In support of their case, plaintiffs produced a report prepared by William B. Hildebrand, Esq. According to Hildebrand, the "purpose" of his report was "to give [his] expert opinion regarding [defendants'] representation of [MPI]" in the coverage case. Hildebrand stated, "[s]pecifically, I have been asked to determine whether that representation fell below the standard of care exercised by reasonably prudent attorneys in New Jersey." Hildebrand said nothing about being retained to opine about whether defendants' alleged breaches of the standard of care proximately had caused plaintiffs' damages or what, if anything, those damages were.

Hildebrand opined that: defendants had breached the applicable standard of care by (1) failing to hire an expert; (2) failing to "communicate with client," in that (a) Wheeler had failed to advise Morris that West American's counsel

sent an email on November 5, 2014, indicating his client was interested in exploring settlement and had failed to follow up on that email;[1] (b) Wheeler had failed to advise "his client" that West American's counsel had told him West American's $34,000 pre-litigation settlement offer might still be on the table; and (c) Wheeler failed to notify Morris about other depositions scheduled in the case; and (3) failing to prepare Morris properly for her deposition. Hildebrand did not opine about damages; in the fact section of his report, he simply stated that Metro's final estimate of covered loss was $182,494.14. He did not opine about proximate causation; he asserted, without any reference to facts, that defendants' failure to hire an expert "was fatal to [MPI's] claim."

After the close of discovery, defendants moved for summary judgment. They did not seek summary judgment on the issue of whether they had deviated from a standard of care or duty owed to MPI. Instead, they sought summary judgment on the discrete issues of proximate causation and damages, the viability of Morris's individual claim, and plaintiffs' punitive-damages claim. Specifically, defendants argued Hildebrand had failed to opine about proximate causation and damages, Morris had lacked standing to maintain an individual

---

[1] The record before us did not contain a copy of the November 5, 2014 email.

7

claim, and plaintiffs had not presented sufficient proofs to meet the standard for punitive damages.

Following oral argument, the motion judge issued an order and written opinion granting defendants' motion. The judge found Hildebrand had failed to analyze how the alleged breaches of the standard of care would have impacted a potential jury verdict or settlement and had not opined that defendants' alleged malpractice proximately caused any damages. The judge also held Morris's individual claim failed because the undisputed facts showed she and defendants did not have an attorney-client relationship. Finally, finding no evidence defendants had acted with malice or had intended to cause plaintiffs' harm, the judge held plaintiffs were not entitled to punitive damages.

On appeal, plaintiffs argue the judge failed to view the facts in a light most favorable to them; failed to apply a "suit within a suit" standard of proving damages in a legal malpractice case and improperly held a damages expert was required when the underlying case had settled; improperly dismissed Morris's claims even though she had claimed damages beyond those alleged by MPI; and improperly dismissed their punitive-damages claim by failing to find a trier of fact could reasonably infer that defendants' conduct was willful and wanton. Because plaintiffs failed to establish defendants' alleged negligence proximately

caused their asserted damages or that defendants had a duty to Morris, summary judgment was appropriate, and we affirm.

## II.

We review de novo the grant of summary judgment, applying the same standard as the motion judge. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Ibid. (quoting R. 4:46-2(c)). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "The 'trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.'" Town of Kearny v. Brandt, 214 N.J. 76, 92 (2013) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Summary judgment is properly granted "when the evidence 'is so one-sided that one party must prevail as a matter of law' . . . ." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 252 (1986)); see also Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014).

"A legal malpractice claim is 'grounded in the tort of negligence.'" Nieves v. Off. of the Pub. Def., 241 N.J. 567, 579 (2020) (quoting McGrogan v. Till, 167 N.J. 414, 425 (2001)). "[A] legal malpractice action has three essential elements: '(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff.'" Jerista v. Murray, 185 N.J. 175, 190-91 (2005) (quoting McGrogan, 167 N.J. at 425). "The plaintiff bears the burden of establishing those elements by some competent proof." Davis, 219 N.J. at 406 (citations omitted).

Generally, a client recovers only losses proximately caused by the attorney's professional negligence. Lieberman v. Emps. Ins. of Wausau, 84 N.J. 325, 341 (1980); Froom v. Perel, 377 N.J. Super. 298, 313 (App. Div. 2005). Proximate cause "'requires an initial determination of cause-in-fact' . . . [which] 'requires proof that the result complained of probably would not have occurred but for the negligent conduct of the defendant.'" New Gold Equities Corp. v. Jaffe Spindler Co., 453 N.J. Super. 358, 379 (App. Div. 2018) (first quoting Francis v. United Jersey Bank, 87 N.J. 15, 39 (1981); then quoting Vuocolo v. Diamond Shamrock Chems., Co., 240 N.J. Super. 289, 295 (App. Div. 1990)).

The plaintiff then "must present evidence to support a finding that defendant's negligent conduct was a 'substantial factor' in bringing about plaintiff's injury, even though there may be other concurrent causes of the harm." Froom, 377 N.J. Super. at 313 (quoting Conklin v. Hannoch Weisman, 145 N.J. 395, 418 (1996)). Finally, the plaintiff must "show what injuries were suffered as a proximate consequence of the attorney's breach of duty," ordinarily measured by "the amount that a client would have received but for the attorney's negligence." 2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 488 (App. Div. 1994). The client must have sustained actual damage that is real, not merely speculative. Olds v. Donnelly, 150 N.J. 424, 437 (1997).

The burden is on the client to show what injuries were suffered as a proximate consequence of the attorney's breach of duty. 2175 Lemoine Ave., 272 N.J. Super. at 488. That burden must be met "by a preponderance of the competent, credible evidence and is not satisfied by mere 'conjecture, surmise or suspicion.'" Ibid. (quoting Long v. Landy, 35 N.J. 44, 54 (1961)). In legal-malpractice cases, proximate causation ordinarily must be established by expert testimony, except when "the causal relationship between the attorney's legal malpractice and the client's loss is so obvious that the trier of fact can resolve the issue as a matter of common knowledge." Id. at 490; see also Sommers v.

McKinney, 287 N.J. Super. 1, 10 (App. Div. 1996) (finding it is only in "rare cases" in which expert testimony is not required in a legal malpractice action).

In sum, to establish the proximate-cause element of their legal-malpractice claim, plaintiffs must prove by a preponderance of the competent, credible evidence that their alleged damages were proximately caused by defendants' negligence. Applied here, plaintiffs must prove defendants' alleged failure to hire an expert, "communicate with client," or prepare Morris properly for her deposition was a substantial factor in causing MPI to accept a $10,000 settlement when it otherwise would have been awarded more by a jury or in a different settlement with West American if the case had not been colored by those alleged breaches of the standard of care. See Lerner v. Laufer, 359 N.J. Super. 201, 221 (App. Div. 2003) (holding that to establish proximate causation of damages in a legal-malpractice action, a plaintiff "must demonstrate that he or she would have prevailed, or would have won materially more . . . but for the alleged substandard performance"). Without expert testimony demonstrating MPI would have prevailed in its coverage case against West American or would have received a greater settlement had defendants met the standard of care, plaintiffs' legal-malpractice claims fail as a matter of law.

We agree with the motion judge that plaintiffs had not established proximate cause as a matter of law and that expert testimony was necessary in

this case to prove proximate causation and damages. The causal relationship between defendants' alleged malpractice and plaintiffs' asserted loss is not "so obvious that the trier of fact [could have] resolve[d] the issue as a matter of common knowledge" without the assistance of expert testimony. Sommers, 287 N.J. Super. at 11. As the motion judge recognized, many factors could impact the settlement value of or potential jury verdict on MPI's insurance-coverage claim. Only an expert could show that MPI would have succeeded in obtaining a better result at trial – which would have required MPI to convince a jury of its entitlement to insurance coverage of its full claim of wind-related damages based on a record that included pre-Sandy complaints from tenants about roof leaks[2] – or in another settlement had defendants not committed the alleged breaches of the standard of care. See Kaplan v. Skoloff & Wolfe, P.C., 339 N.J. Super. 97, 103-04 (App. Div. 2001) (finding that in a legal malpractice action based on an insufficient-settlement theory, expert testimony is required to establish the value of the claim); Kelly v. Berlin, 300 N.J. Super. 256, 269 (App.

---

[2] To state a viable claim for coverage, an insured bears the initial burden of demonstrating that its asserted claim falls within the basic scope of the coverage under the policy. Bldg. Materials Corp. of Am. v. Allstate Ins. Co., 424 N.J. Super. 448, 464 (App. Div. 2012). The insurer then would have the opportunity to prove the insured's claim fell within one or more of the policy's exclusions. Aviation Charters v. Avemco Ins. Co., 335 N.J. Super. 591, 594 (App. Div. 2000).

Div. 1997) (finding expert testimony is necessary to enable a jury to determine whether the alleged malpractice "caused plaintiff to settle for a lower amount than he otherwise would have, and, if so, the amount of damages plaintiff sustained as a result").

Hildebrand did not opine about proximate cause or damages. As he clearly stated in his report, he was retained to opine only about whether defendants had breached "the standard of care exercised by reasonably prudent attorneys in New Jersey." He did not opine that if defendants had met that standard, MPI would have prevailed at trial or obtained a better settlement given the facts underlying the coverage case. He did not opine about the fair settlement value of the underlying coverage case. Contrary to plaintiffs' argument, Hildebrand did not opine about what their purported damages were. Merely repeating Metro's final estimate of covered loss is not the equivalent of rendering an expert opinion on damages.

We recognize an attorney must communicate all settlement offers to his or her client and that a legal-malpractice action based on a straight-forward failure to relay a settlement offer may not require expert testimony on the breach of that duty or the damages caused by it. See Sommers, 287 N.J. Super. at 12. Even assuming counsel's comment at the initial court conference indicating West American's $34,000 pre-litigation settlement offer "might" still be on the

table constituted an actual settlement offer that Wheeler had an obligation to relay, the record is devoid of any evidence, such as a certification from or any testimony of Morris or any other MPI representative, establishing MPI would have accepted the $34,000 offer it already had rejected.

We also recognize Hildebrand stated defendants' failure to hire an expert "was fatal to [MPI's] claim." That bald assertion, with nothing more, is not an admissible expert opinion on causation. See Buckelew v. Grossbard, 87 N.J. 512, 524 (1981) (explaining that "an expert's bare conclusions, unsupported by factual evidence, is inadmissible"). To make that statement anything more than what it is – an impermissible net opinion with no evidential weight – Hildebrand would have had to explain the why and wherefore behind it. See Crispino v. Twp. of Sparta, 243 N.J. 234, 257 (2020) (finding an expert is required to "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion'" (quoting Townsend v. Pierre, 221 N.J. 36, 54 (2015))). Hildebrand would have had to explain why not having an expert "was fatal to [MPI's] claim" and, to establish proximate causation of damages, he would have had to opine that retaining an expert would have enabled MPI to obtain a jury verdict in its favor or a better settlement. And he didn't do that.

We reject plaintiffs' argument that summary judgment was not appropriate because MPI could have proceeded without expert testimony by following a

"suit within a suit" procedure at trial. That argument, which, if followed, would have the effect of barring summary judgment in nearly every legal-malpractice case, confuses a procedural trial framework with plaintiffs' prima facie burden. The "suit within a suit" approach allows a plaintiff to "present[] the evidence that would have been submitted at a trial had no malpractice occurred[,]" thereby "clarify[ing] what would have taken place but for the attorney's malpractice." Garcia v. Kozlov, 179 N.J. 343, 358 (2004). That procedural choice does not, as plaintiffs seem to suggest, relieve plaintiffs of their substantive, prima facie burden to establish proximate cause.

Plaintiffs' failure to present expert evidence on proximate causation and damages entitles defendants to judgment dismissing the case as a matter of law. Accordingly, we affirm the order granting summary judgment.

As for Morris's individual claim, plaintiffs also failed to demonstrate the first prong of a legal-malpractice claim: the existence of an attorney-client relationship between Morris and defendants. "The existence of an attorney-client relationship is, of course, essential to the assertion of a cause of action for legal malpractice." Froom, 377 N.J. Super. at 310.

The record is devoid of evidence supporting plaintiffs' claim that an attorney-client relationship existed between Morris and defendants. The parties did not include a copy of the retainer agreement in the appellate record, but we

know the retainer agreement was between MPI and defendants, not Morris and defendants. In their complaint, plaintiffs alleged "[p]laintiff [MPI] executed a Legal Fee Agreement with . . . [d]efendants, Jonathan Wheeler and/or Law Offices of Jonathan Wheeler, P.C." and that the agreement "concern[ed] [MPI's] right to recover from West American . . . ." Plaintiffs made no allegation about any agreement between Morris and defendants about defendants representing her individually. In the underlying lawsuit, only MPI was named as a plaintiff. The transcript of Morris's deposition identifies defendant Barnabei and the firm as representing "the [p]laintiff[,]" which was MPI, not Morris. Hildebrand did not opine Morris and defendants had an attorney-client relationship.

Plaintiffs claim defendants represented Morris because they "clearly interacted directly with [her]." Mere interaction does not establish the existence of an attorney-client relationship. With no citation to the record, plaintiffs also assert defendants "purported to represent her during her deposition in the underlying matter." That unsupported assertion does not create a genuine issue of material fact sufficient to defeat summary judgment on this issue, especially when the record evidence demonstrates otherwise. The motion judge's finding that Morris was deposed as a corporate representative of MPI is supported by credible and unrebutted evidence in the record.

In "carefully circumscribed" holdings, courts have found an attorney owed a duty to a non-client. Green v. Morgan Props., 215 N.J. 431, 458 (2013). However, "the grounds on which any plaintiff may pursue a malpractice claim against an attorney with whom there was no attorney-client relationship are exceedingly narrow" and are not present here. Ibid.; see also Banco Popular N. Am. v. Gandi, 184 N.J. 161, 182-83 (2005) (allowing bank's claim against attorney for one of bank's creditors to proceed based on attorney's negotiations with the bank and an opinion letter provided to the bank); Petrillo v. Bachenberg, 139 N.J. 472, 474 (1995) (finding an attorney for a real-estate seller has a duty not to provide misleading information to potential buyers who the attorney knows or should know will rely on it).

Having concluded the motion judge properly granted summary judgment on plaintiffs' substantive claims, we need not reach their argument regarding their punitive-damages claims. To the extent we have not otherwise commented on them, we have duly considered plaintiffs' remaining arguments and conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A- 2653-20

18